IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

LAWRENCE B. DICKENS,                    *

      Petitioner,                    *

                             *    C.A. No. ___0 6 - 7 9 0___ 2006

      v.                               *

RICK KEARNEY, Warden,                   *

Sussex Correctional Institution         *

and Carl C. Danberg, Attorney           *

General for the State of Delaware.      *

      Respondents.                   *

FILED

DEC 2 7 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

RG
scanned

---

Memorandum In Support of Petition For Writ of Habeeas Corpus by a
Person in State Custody Pursuant to Federal Civil Rule 15

---

Clerk:  United States District Court        Rick Kearney, Warden

        Lockbox 18, 844 King Street       Sussex Correctional Institution

        Wilmington, Delaware 19801        Georgetown, Delaware 19947

        Mr. Carl C. Danberg            Attn:  Mr. Loren C. Meyers

        Attorney General of the           Deputy Attorney General

        State of Delaware             Pursuant to U.S.C. Title 28

        820 North French Street        Section 2254, Rule 4 by

        Wilmington, Delaware 19801        Certified Mail & Title 10

                                                Del. C. 3103(c)

- i -

TABLE OF CONTENTS:                                              PAGE:

I.      Table of Cases and Authorities: ........................... iii.

II.     Introduction: ............................................. 1.

III.    Summary of Legal Claims: ................................. 4.

IV.     Commitment: Claim A: ..................................... 6.

V.      Legality of Sentence: Claim B: ........................... 7.

VI.     Conclusive Presumption: Claim C: ......................... 8.

VII.    Counsels' Failure to Object: Claim D: .................... 14.

VIII.   Brady Material Violation: Claim E: ....................... 16.

IX.     Ineffective Assistance of Counsel under Brady: Claim F: ... 20.

X.      Ineffective Assistance of Counsel under Sandstrom: Claim G: 24.

XI.     Conclusion: .............................................. 26.

- ii -

TABLE OF CASES AND AUTHORITIES:

                                                                PAGES:

Aguillar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964)............ 21.

Beavers v. Balkcom, 636 F.2d 114 (5th Cir. 1981)................................. 21.

Berger v. United States, 295 U.S. 78,88, 55 S.Ct. 629,633, 79 L.Ed. 1314 (1935)... 18.

Bollenbach v. United States, 326 U.S. 607,614, 66 S.Ct. 402,406, 90 L.Ed. 350 (1946)
.................................................................... 8.

Brady v. Maryland, 373 U.S. 83,87, 83 S.Ct. 1194,1196, 10 L.Ed.2d 215,217 (1963)...
..................................................... 3, 4, 16-19, 21-22.

Briscoe v. State, 606 A.2d 103 (Del. Supr. 1992)................................. 21.

Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397 (1953)................................ 3.

Carella v. California, 109 S.Ct. 2419 (1989)..................................... 9.

Chambers v. Armontrout, 907 F.2d 825 (8th Cir. 1990)............................ 21.

Chambers v. Mississippi, 410 U.S. 284,294 (1973)................................ 22.

Commonwealth of Pennsylvania v. Torres, 477 A.2d 1350 (1984)..................... 21.

Cook v. State, 758 A.2d 933 (Del. Supr. 2000)................................... 20.

Crandell v. Bunnell, 144 F.3d 1213 (9th Cir. 1998).............................. 22.

Culombe v. Connecticut, 367 U.S. 588,621, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).... 17.

Cuyler v. Sullivan, 446 U.S. 335,346, 100 S.Ct. 1708,1717, 64 L.Ed.2d 333 (1980).. 25.

Daniels v. Maggio, 669 F.2d 1075 (1982)......................................... 21.

Dickens v. Redman, C.A. No. 82-202-JLL......................................... 1, 25.

Dickens v. Redman, C.A. No. 90-91-SLR.......................................... 2, 25.

Dickens v. State, 437 A.2d 159 (Del. Supr. 1981)................................ 3, 16.

Dickens v. State, No. 453 (Del. Supr. 1989).................................... 3.

Dickens v. State, No. 118 (Del. Supr. 1994).................................... 3.

Dickens v. State, No. 707 (Del. Supr. 2002)...................................- 3.

Dillion v. Duckworth, 751 F.2d 895 (7th Cir. 1985).............................. 23.

Duross v. State, 494 A.2d 1265 (Del. Supr. 1985)............................... 24.

Fay v. Noia, 372 U.S. 391, 83 S.Ct. 833 (1963)................................. 4.

Gaines v. Hooper, 575 F.2d 1147 (5th Cir. 1978)................................ 21.

Hall v. State, 473 A.2d 352 (Del. Supr. 1984).................................. 9.

Herring v. Estelle, 491 F.2d 125 (5th Cir. 1974)............................... 21.

Hooks v. State, 416 A.2d 189 (Del. Supr. 1980)................................. 18.

In re Oliver, 333 U.S. 257,273, 68 S.Ct. 499,507, 92 L.Ed. 682 (1948)............ 22.

In Re Winship, 397 U.S. 358,364, 90 S.Ct. 1068,1072-73, 25 L.Ed.2d 368 (1970).. 9, 13.

Jencks v. United States, 335 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957)....... 18.

(Citations, Cont. pg. iii)

PAGES:

Johnson v. State, 607 A.2d 1173,1176 (Del. Supr. 1992)......................16, 19.

Johnson v. State, 794 A.2d 654 (2002)............................................ 22.

Jones v. State, Del. Supr., No. 285, 1989, Moore, J. (July 31, 1989)........... 24.

Lance v. State, 600 A.2d 337 (Del. Supr. 1991)..............................16, 18.

Lewis v. State, 416 A.2d 208 (Del. Supr. 1980)................................... 20.

Michael v. State, 529 A.2d 752,755 (Del. Supr. 1987)............................ 16.

Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).......... 16.

Morisette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952)..... 13.

Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).... 9, 12-13.

Murray v. Carrier, 477 U.S. 478 (1986)......................................... 24.

Nichols v. U.S., 75 F.3d 1137 (7th Cir. 1986).................................. 23.

Plass v. State, 457 A,2d 362 (Del. Supr. 1983)................................... 9.

Potter v. State, 547 A.2d 595, app'd remanded, 550 A.2d 35 (Del. Supr. 1988).... 22.

Probst v. State, 547 A.2d 114,119 (Del. Supr. 1988)............................ 19.

Robinson v. State, 562 A.2d 1184,1185 (Del. Supr. 1989)........................ 14.

Rogers v. Richmond, 365 U.S. 534,545, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961)..... 3, 17.

Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).............

.................................................. 4,5, 9-11, 13- 15, 24.

Smith v. Redman, C.A. No. 90-59-JLL........................................... 22.

Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).... 21.

Stacey v. State, 358 A.2d 379 (Del. Supr. 1979)................................ 22.

Strickland v. Washington, 466 U.S. 668,685-690,695 (1984)........ 4-5,14,21,23,25.

Townsend v. Sain, 83 S.Ct. 745 (1963)........................................... 3.

U.S. v. Galloway, 56 F.3d 1259 (10th Cir. 1995)............................... 23.

U.S. v. Gray, 878 F.2d 702 (3rd Cir. 1989).................................... 22.

U.S. v. McKinnon, 995 F.Supp. 1404 (M.D. Fla. 1998)........................... 21.

U.S. v. Myers, 892 F.2d 642 (7th Cir. 1990)................................... 23.

United States v. Agurs, 427 U.S. 100,104,108-113, 96 S.Ct. 2392,2397,2399-2402 (1976)

.......................................................... 16-17, 23.

United States ex rel Tilley v. Cavel, 294 F.2d 12,24 (1961).................... 3.

United States v. Kaplan, 554 F.2d 577,580 (3rd Cir. 1977)...................... 18.

United States v. Martin Supply Co., 430 U.S. 564,572-73, 97 S.Ct. 1349,1355-56, 51

L.Ed.2d 642 (1977)............................................................. 8.

United States v. United States Gypsum Co., 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d

854 (1978)..................................................................... 4.

United States v.Valenzuela-Bernal, supra, 458 U.S., at 872-874, 102 S.Ct., at 3449-

(Citations, Cont. pg. iv.)

PAGES:

3450 (1982)............................................................. 23.

White v. Godinez, 143 F.3d 1049 (7th Cir. 1990)........................ 22.

Superior Court Criminal Rules:

Super. Ct. Crim. R.61.............................................. 3, 25.

Super. Ct. Crim. R.61(b)(2)........................................... 3.

Super. Ct. Crim. R.61(i)(1)........................................... 3.

Super. Ct. Crim. R.61(i)(2)........................................ 3, 14.

Super. Ct. Crim. R.61(i)(3)........................................ 3, 14.

Super. Ct. Crim. R.61(i)(4).........................................3, 14.

Super. Ct. Crim. R.61(i)(5)....................................... 15, 25.

Supreme Court Rules:

Supr. Ct. R.8..................................................... 19, 24.

Supr. Ct. R.19(c)..................................................... 19.

Delaware Statutes:

Title 10 Del. C. Sec. 3103(c)......................................... i.

Title 11 Del. C. Sec. 306(a)......................................... 13.

Title 11 Del. C. Sec. 306(e)......................................... 13.

Title 11 Del. C. Sec. 632............................................ 10.

Title 11 Del. C. Sec. 636............................................. 9.

Title 11 Del. C. Sec. 641........................................11, 13.

United States Constitution:

U.S. Constitution Amendment 5........................................ 16.

U.S. Constitution Amendment 6....................................15, 25.

U.S. Constitution Amendment 14.......................... 4-5, 9, 13, 16,

Table of Cases & Authorities:

Title 28 U.S.C. Sec. 2243............................................. 3.

Title 28 U.S.C. Sec. 2245............................................. 3.

Title 28 U.S.C. Sec. 2249............................................. 3.

Title 28 U.S.C. Sec. 2250............................................. 3.

Title 28 U.S.C. Sec. 2254.................................. i,1,13,25.

Title 28 U.S.C. Sec. 2254(d)(1-8)................................. 6, 7.

(Citations, Cont. pg. v)

PAGES:

Federal Rule Civil Procedure:

Federal Civil R.15............................................................  i.


Other Authorities:

Comment, Materiality and Defense Request; Aids in Defining the Prosecutor's Duty
of Disclosure, 59 Iowa L. Rev. 433,445 (1963)................................. 18.

Ancient Common Law Act of February 5, 1867, C.28, Section 1, 14, Stat. 385-386...
............................................................................  4.


Delaware Uniform Rules of Evidence:

Article IV, Rule 404(a)(1) ................................................... 17.
Article IV, Rule 404(a)(2) ................................................... 17.
Article IV, Rule 404(b)(3) ................................................... 17.
Article V, Rule 612(b) ....................................................... 18.
Article V, Rule 612(c) ....................................................... 19.

Comes Now Lawrence B. Dickens and petitions the Court for a Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254 and amends his petition after exhausting his state remedies.  See:  Exhibits (1A-1, 2A-2, 3B-3)

The Final Orders from the Superior Court and Supreme Court of Delaware denying Petitioner's release from illegal custody.

I.   Introduction:

Petitioner refers to the facts asserted in his petition for Writ of Habeas Corpus for support of the statements and assertions made herein.

And the Petitioner is in custody illegally and unlawfully.  However, at the interim the Petitioner, Lawrence B. Dickens was arested on August 16, 1979.  He was charged with first degree murder, attempted murder first degree (2 cts.), reckless endangering (3cts.), possession of a deadly weapon during the commission of an felony.  Petitioner at trial, interposed the defense of "extreme emotional distress" which if proven it would have reduced the murder charge to manslaughter. Shortly thereafter, Petitioner was convicted by a Superior Court jury of first degree murder, attempted murder 1st, assault 1st (lesser included offense), and possession of a deadly weapon during the commission of a felony.  On direct-appeal, Petitioner's conviction and sentence were affirmed, Dickens v. State, 437 A.2d 159 (Del. Supr. 1981).

Petitioner filed an unsuccessful Writ of Habeas Corpus pursuant to 28 U.S.C. Section 2254, on or about April 22, 1982, the United States District Court dismissed the petition on September 13, 1982 for failing to exhaust state available remedies. See:  Dickens v. Redman, C.A. No. 82-202-JLL.

Petitioner subsequently began a campaign to obtain the trial transcripts from his trial so as to properly prepare a Pro Se Motion for Postconviction Relief in the Superior Court as ordered by the United States District Court.

This campaign lasted eight years, and Dickens wrote several letters and petitions requesting his transcripts.  Finally, the United States District Court intervened and ordered the State to provide Dickens with the transcripts.

In December 1988, Petitioner finally received the trial transcripts in accordance with the U.S. District Court's Order.  Petitioner filed a Pro Se Superior Court Criminal Rule 61 Postconviction Motion petition without a supporting memorandum in April 1989. On July 26, 1989 Dickens, the Petitioner was appointed counsel by Superior Court to represent him on Postconviction Relief.  The appointed counsel never prepared any petitions for the Petitioner or responses as would be required under Professional

Norms of an appointed counsel.  The State responded to the Petitioner's Postconviction petiition on August 7, 1989.  On August 11, 1989 court-appointed counsel requested an enlargement of time to respond to the State's Answer.  Dickens, the Petitioner wrote a letter to the Court explaining that the court-appointed counsel had not represented him, never once discussing the matter with him through correspondence or meeting with the Petitioner and reviewing those issues presented.  On October 18, 1989 Petitioner's Postconviction Rule 61 was denied and the Court failed to addressed the Petitioner's letter regarding his lack of representation during the Postconviction proceedings as ordered by the Court.  Furthermore, court-appointed counsel's letter of August 11, 1989 requesting an enlargement of time was treated as an rebuttal to the State's response and was never addressed by the Court.  Appointed-counsel never filed a rebuttal to the State's Answer.  Consequently, Petitioner was denied representation during his Postconviction proceedings based on appointed-counsel's failure to rebut the State's response and failure to advocate the best interest of the Petitioner as ordered by the Superior Court.

Petitioner filed a Pro Se Notice of Appeal to the Delaware Supreme Court on November 6, 1989 after being denied on his Postconviction Motion Rule 61.  On November 17, 1989 court-appointed counsel filed an "out of time" Notice of Appeal to the same Court.  Petitioner filed a Pro Se Brief in Support of his appeal to the Delaware Supreme Court on January 23, 1990.  The State filed their Answer in opposition on February 8, 1990.  The Delaware Supreme Court affirmed the Superior Court's decision on March 22, 1990.  Court-appointed counsel again did not addressed the issues or file a brief in support of Petitioner's claims.

On February 2, 1991 Petitioner again filed for relief in the United States District Court pursuant to 28 U.S.C. Section 2254, presenting the same claims as presented in his Postconviction Relief petition and including a violation of his Sixth Amendment Right to Effective Assistance of Counsel through postconviction proceedings and alleging the same in his initial proceedings.  Again on February 2, 1993 Petitioner's 28 U.S.C. Section 2254 was dismissed without prejudice by the U.S. District Court for failing to exhaust State remedies.  (See: Dickens v. Redman, C.A. 91-90-SLR.)

Petitioner filed a Pro Se Notice of Appeal in the Third Circuit Court of Appeals on February 23, 1993 to review the District Court's decision.  On November 8, 1993, the Third Circuit Court of Appeal affirmed the determination of the U.S. District Court and denied the Certificate of Probable Cause.

On February 25, 1994 Petitioner filed a second petition under Superior Court Criminal Rule 61 Postconviction Relief in the New Castle County Superior Court, bringing forth his ineffective assistance of counsel claim in violation of the Sixth Amendment of the United States Constitution as ordered by the U.S. District Court, and affirmed by the Third Circuit Court of Appeals.  On March 10, 1994 the Superior Court dismissed the petition as barred by Superior Court Criminal Rule 61 (b)(2), and 61(i)(1-4).  Petitioner filed a Pro Se Motion for Reargument on March 10, 1994 in the Superior Court alleging that the time bar was of no fault of his own and because of outside interference the time had lapsed.  Petitioner's Motion for Reargument was denied on March 23, 1994 without briefing.  Petitioner subsequently appealed the denial of Postconviction Relief Rule 61 and Motion for Reargument again in Pro Se, with the Delaware Supreme Court.  On September 13, 1994 the Delaware Supreme Court upheld the denial of both the Petitioner's Motion for Reargument and his appeal from the Superior Court's decision without allowing any briefing or holding an evidentiary hearing to determine the cause.

On November 8, 2002 Petitioner filed a third Postconviction Relief Motion Rule 61, in Pro Se, as a result it was referred to a different judge (Hon. Susan del Presco) which Petitioner brought his ineffective assistance of counsel claim under Brady as ordered by this Court when Petitioner was dismissed without prejudice by this same Court's Order, dated September 1982.  On December 6, 2002 Superior Court denied Petitioner's petition as being time barred under Superior Court Rule 61(i)(1) because it was more than three years after his conviction became final.  Wherefore, Petitioner appealed the denial of his Rule 61 petition to the Delaware Supreme Court with a Pro Se Notice of Appeal on January 15, 2003.  Delaware Supreme Court denied the appeal of Petitioner on April 21, 2003.  Dickens v. State, No. 707, 2002  (Del. Supr. 2002).

Petitioner moves this Court to the holding in Townsend v. Sain, 83 S.Ct. 745 (1963) and U.S.C.A.  Sections 2243, 2245, 2249 and 2250.

Petitioner asserts as a matter of record and argues that law deems this Honorable Court grant relief by:

(1)    Determine the facts which are essential to predicate a decision of the Ultimate Constitutional Questions presneted herein.

(2)    And to hold an Evidentiary Hearing to try those issues of fact.  See and Compare: Brown v. Allen, 344 U.s. 443, 73 S.Ct. 397; Rogers v. Richmond, 365 U.S. 534,540, 81 S.Ct. 735,739; and United States ex rel. Tillery v. Cavel, 294 F.2d 12 , 24 (1961).

(3)    Deciding whether there are facts in dispute.  And that his postconviction appeals Dickens v. State, No. 453, 1989; Dickens v. State, No. 118, 1994; and Dickens v. State, No. 707, 2002 which were all affirmed by the Delaware Supreme Court clearly show that

there were facts in dispute in a way that the State of Delaware cannot justify the Petitioner's illegal imprisonment. Thus, this Court must undertake those equal protections of law held in Fay v. Noia, 372 U.S. 391, 83 S.Ct. 833 wherein the historic conception of the "Great Writ" anchored in the Common Law and both in Delaware and Federal Constitutions to be the efficious and imparative remedy for detentions of fundamental illegalities. therefore, Petitioner respectfully ask this Court and Respondents to Show Cause within 20 days after filing of this Writ of Habeas Corpus and Amended Petition to explain why Petitioner Lawrence B. Dickens does not have the right to a Writ of Habeas Corpus. Petitioner argues that he has a right and had the right under Ancient Common Law. And that the Act of February 5, 1867 C.28 Section 1, 14 Stat. 385-386 extends the power of this Federal Court to take testimony and to determine the Facts De Novo, pursuant to this Common Law understanding so held in Fay v. Noia, 372 U.S. 416, 83 S.Ct. 837, n. 27 (1963). And that the mandated hearing provisions of the Act of 1867 remains substantially unchanged in the present codification of 28 U.S.C. Section 2243. And Petitioner prays relief be granted to him. Additionally, Petitioner contends that State Courts' determinations were false and fraudulent decisions and Petitioner's claims are federal questions of law which requires the Respondents to Show Cause regarding the following legal claims.

II.  Legal Claims:

(A)  Whether Petitioner's commitment to prison is pursuant to a judgment of conviction which is legal on its face.

(B)  Whether Petitioner's sentences are legal on their face.

(C)  Whether the jury could easily have interpreted the challenged presumption as conclusive at the Petitioner's trial, like presumptions in Sandstrom v. Montana, 442 U.S. 510 (1979); Morisette v. United States, 342 U.S. 246 (1952); and United States v. United States Gypsum Co., 438 U.S. 422 (1978), or as shifting the burden of persuasion like that in Mullaney v. Wilbur, 421 U.S. 684 (1975), and because either interpretation would have violated the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt.

(D)  Whether trial counsels Joseph B. Green and John L. Sullivan were ineffective at trial stage for failing to object to the Trial Judge's unconstitutional jury instructions as outlined in Sandstrom v. Montana, 442 U.S. 510 (1979); and Strickland v.Washington, 466 U.S. 668, 687-688 (1984).

(E)  Whether the State withheld exculpatory evidence which the defense specifically requested in their discovery and whether the Trial Judge abused its discretion in denying the defense an opportunity to present its case. Brady v. Maryland, 373 U.S. 83,87, 83 S.Ct. 1194,1196, 10 L.Ed.2d 215,217 (1963). This violation infringed upon the Petitioner's Fourteenth Amendment Right of the United States

Constitution and the Delaware Supreme Court for misinterpreted the requirements in discovery.

(F)  Whether Trial counsels Joseph B. Green and John L. Sullivan were ineffective at trial stage for failing to secure the Petitioner's right to a fair trial and by securing his Fundamental Right to the Fourteenth Amendment of the United States Constitution and by not effectively litigating both the prosecutorial misconduct and abuse of discretion.  Petitioner has established sufficient "cause and prejudice" to have his claims addressed on their merits. Strickland, supra.

(G)  Whether Petitioner's counsels Joseph B. Green and John L. Sullivan were ineffective for failing to raise the Sandstrom error on direct appeal, and whether due to this failure Petitioner has demonstrated sufficient "cause and prejudice" to have his claims addressed on their merits. Strickland v. Washington, 466 U.S. 668, 690 (1984).

- 5 -

Commitment: Claim A.

COMES NOW the Petitioner Lawrence B. Dickens, who challenges whether his commitment to prison is pursuant to a judgment of conviction which is legal on its face.  Pursuant to Title 28, Section 2254 (d),(1),(2),(3), (5),(6),(7), and (8).

Legality of Sentence:  Claim B.

And Petitioner asserts this United States Court must determine whether his sentencess are legal on their face pursuant to Title 28, Section 2254 (d)(8) or unless that part of the record of the State Court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal Court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record: And in an Evidentiary Hearing in the proceeding in the Federal Court, when due proof of such factual determination has been made, unless the existence of one or more of the circumstances respectively set forth in paragraphs numbered (1) to (7), inclusive, is shown by the Applicant, otherwise appears, or is admitted and the Court concluded pursuant to the provisions of paragraph numbered (8) that the record in the State Court proceeding, considered as a whole, does not fairly support such factual determination, the burder shall rest upon the Respondents to establish by convincing evidence that the factual determination by the State Court was proper.

<u>Conclusive Presumption: Claim C.</u>

Petitioner asserts that the jury instruction as given by the Trial Judge Robert C. O'Hara imposed a "mandatory presumption" upon him which violated due process. The Due Process Clause of the Fourteenth Amendment of the United States Constitution denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the offense charged. Jury instructions relieving States of their burden violates a defendant's due process right and guarantees. Unquestionably, a defendant may assuredly "insist" upon observance of this guarantee even when the evidence against him is so over-whelming as to establish guilt beyond a reasonable doubt. This is why the United States Supreme Court has found ot unconstitutionally impermissible for a judge to direct a verdict for the State. See: <u>United States v. Martin Supply, Co.</u>, 430 U.S. 564, 572-73, 97 S.Ct. 1349, 1355-56, 51 L.Ed.2d 642 (1977). In other words,

"The question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedures and standards appropriate for criminal trials."

See: <u>Bollenbach v. United States</u>, 326 U.S. 607, 614, 66 S.Ct. 402, 406, 90 L.Ed. 350 (1946).

In the instant case, the Trial Judge, in his charge to the jury, instructed them in part, as follows:

"Likewise, in considering the defendant's state of mind, you should be aware that every person is presumed to intend the natural and probable consequences of his act, and if a voluntary, willful act has a tendency to destroy life, the natural conclusion is that the taking of life was intended." <u>See</u>: Trial Transcripts, D-206, Appendix Exhibit (3-A3).

As analyzed here, Delaware's Supreme Court Justices completely failed to address Petitioner's claims as are presented here on themerits even though the Petitioner fairly presented these claims to the lower courts on postconviction review. Additionally, Delaware's Supreme Court has concluded in numerous case decisions as a matter of both State and Federal law, that such instructions as given by Trial Judge above, constituted "mandatory presumptions" relieving

- 8 -

the State of proving elements of the offense charged. See: Plass v. State, 457
A.2d 362 (Del. Supr. 1983); Hall v. State, 473 A.2d 352 (Del. Supr. 1984); and
Carella v. California, 109 S.Ct. 2419 (1989). That interpretation of State law
is binding in this sub judice. See: Title 11 Del. C. Sec. 636 Murder First
Degree in violation of the Petitioner's due process rights. In other words, the
instructions as given unconstitutionally imposed conclusive presumptions as to
core elements of 11 Del. C. Sec. 636, the element of "intent" as is required for
a conviction of murder in the first degree. This factual bssis is predicated on
the finding in the record that the Court erred, in "omitting" explanation as to
the statute the Court read during trial concerning the existence of the presumed
state of mind and voluntary act. It moreover, is clear that the instructions
given during trial, were phrased as "commands" for the instructions were "explicit"
to the effect and were not sufficiently explained elsewhere in the charge to the
jury to be merely permissive. The Petitioner's jury was first told, that "like-
wise, in considering the defendant's state of mind, you should be aware that
every person is presumed to intend the natural and probable consequences of his
act and second; that if a voluntary, willful act has a direct tendency to destroy
life, the natural conclusion is that the taking of life was intended." It is the
Petitioner's contention that the above mandatory directions in the Court's charge
directly foreclosed independent jury consideration of whether the facts proved
established essential elements of 11 Del. C. Sec. 636, Murder First Degree, the
offense upon which Petitioner was accused and subsequently convicted of. Certainly,
the Court realizes that any such charge supra, as given to the jury during trial,
relieved the State of its burden of proof as articulated in In Re Winship, 397
U.S. 358, 364, 90 S.Ct. 1068, 1072, 25 L.Ed.2d 368 (1970), namely proving by clear
and convincing evidence every element of the offense beyond a reasonable doubt.
Inconsistent however, in the lower Court was the State's recital that such
instructions and presumptions derived therefrom at most amounts only to a permis-
sible inference. See Judge Herlihy's denial Submitted Date: August 11, 1989,
Decided: October 18, 1989, See Appendix (Exhibit 4-A4, at p. 13). In any event,
Judge Herlihy's reasoning contained in his opinion is also inconsistent with the
Fourteenth Amendment of the United States Constitution and consequently must
fail in this area, in as much as was pointed out by the dictates of Sandstrom

v. <u>Montana</u>, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), that, the effect
of a presumption as explained in a jury instruction must be <u>tested</u> by the way a
reasonable <u>juror</u> could have interpreted the charge and <u>not</u> by the interpretation
which a <u>Court</u> would place on the charge.  Therefore, viewed in this light, the
charge given in this case could well have and was regarded by the "jury" as an
instruction that the defendant was "presumed" to have intended the taking of the
life of "Myrtis Handy" unless he personally <u>rebutted</u> the presumption by an expla-
nation which the jury found to be satisfactory and irrespective of the entire
jury charge, because the impermissible presumption <u>conflicted</u> with the <u>overriding</u>
presumption of <u>innocence</u>.  Additionally crucial for the Petitioner to successfully
rebut the unconstitutionally infirm burden shifting presumption, was the fact that
the defendant did not altogether deny the shooting, but instead, interposed the
legal defense of "extreme emotional distress" which given a appropriate instruction
from the Trial Judge on this defense, would have undoubtedly reduced the murder
first degree charge to a lesser included offense of "Manslaughter."   <u>See</u>: 11 <u>Del</u>.
<u>C</u>. Sec. 632.

     Indeed, even the prosecutor for the State of Delaware at trial, Mr. Eugene M.
Hall, conceded as much by his own admission regarding an exception to the Court's
charge to the jury which was, as follows:


     "<u>The Court</u>:  Let's see if there is anything else.

     <u>Mr. Hall</u>:  Yes, your Honor, I have an exception on extreme emotional disturbance
     or distress.


     <u>The Court</u>:  What is that?

     <u>Mr. Hall</u>:  Your Honor, the State believes that the Court should have given some
     explanation as to that statute that the Court read.  Specifically, the State
     would request that (D-230) your Honor instruct:  In determining whether such
     a reasonable person in the Defendant's situation under the set of circumstances
     as he believed them to be would have suffered from extreme emotionally distress.
     And furthermore, your Honor, it was the State's understanding that that was
     what the Court said yesterday as to the Court's intention, that the Court was
     going to read the statute and then explain the statute and read an instruction

from somewhere that had exactly this language.  And it really caught the
State off guard when the-- when that instruction in the statute wasn't
explained.

The Court:  We yes, Mr. Green?

Mr. Green:  Your Honor, in going back to my request, my request is that
Sect 3 be read in addition to Section 1, that they-- it's in the alter-
native, that--

The Court:  Very well.  The exceptions are noted.  With respect to assault
first, I will ask the jury to come back and I will instruct them further.

Mr. Hall:  Your Honor, can I assume that you are (D-231) are not going to
reinstruct the jury--

The Court:  Yes.

Mr. Hall:  -- with respect to extreme emotional distress?

The Court:  Yes, the exception is noted.

Mr. Hall:  Your Honor, for the record, can I also place another exception on,
namely, that the Court didn't instruct on credibility of witnesses, which is
the standard charge.

The Court:  Very well."

See:  Trial Transcripts D-229 through D-231, (Appendix Exhibit 5-A5).

    Therefore, as this Court can clearly see the Sandstrom error was not
the only portion in the Trial Judge's charge that was constitutionally in-
firm, throughout the charge there were infirmities.  Additionally, regardless
of th status of extreme emotional distress as an affirmative defense under
11 Del. C. Section 641, is an element of the crime of murder first degree,

the offense which the accused was charged, and the accused cannot constitution-
ally be prevented from introducing evidence bearing on the ability to form such
intent. As a direct result of the Court's evidentiary ruling precluding such
instructions with respect to 'extreme emotional distress', Trial Transcripts
D-231, "the presumption that the accused intended the natural consequences of
his acts was allowed to go to the jury unrebutted." This existence of such an
irrebuttable presumption in a criminal trial of this nature is contrary to
well established Delaware law, and offends the United States Constitution in
that, it improperly relieves the State of its burden to prove each and every
element of the offense charged. Hence, given the State's heavy burden to prove
"intent" a proper instruction, including expert testimony, concerning the effect
of extreme emotional distress as relates to the mental state of the accused was
highly relevant and admissible in a criminal trial to rebut the evidence and
presumption therefrom presented by the State. Morever, the United States Supreme
Court has used the Due Process Clause to strike down efforts by the States to
decrease the prosecutions evidentiary burden in proving the elements of the crime.
As a result, contrary to the Supreme Court Order affirming Petitioner's Postcon-
viction Appeal, See: Supreme Court Order dated: 3/22/90. Appendix Exhibit 1-A1,
cases such as Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508
(1975), have asserted; where there was a "presumption" operating to establish
one fact by proving another, the State cannot insist that the defendant assume the
responsibility of proving his assertion of affirmative defenses as in the instant
case (extreme emotional distress), by a preponderance of the evidence, without
improperly shifting any burden, th State thus, is now, in lieu of Mr. Hall's own
admissions regarding the Trial Judge's faulty instructions, Trial Transcripts
(D-229 through D-231), hard-pressed to articulate how also that if, in respect to
the instruction that the law presumes a person intends the natural and probable
consequences of his voluntary acts, how the jury interpreted the presumption as
not having the effect of shifting the burden to the defendant, thus, against this
backdrop, it is sufficient to "presume" in all fairness that the jury could have
easily concluded and did, that upon proof by the State of the homicide that
which the defendant was charged, and additional facts not themselves establishing
the "elements" of "intent to commit homicide" that the burden was shifted to the
defendant to prove that he lacked requisite mental state to commit intentional
or deliberate murder in the first degree. Indeed, Petitioner asserts, even
with this blatant due process violation of the Fourteenth Admendment,

overriding defendant's "presumption of innocence" which the law endows the accused
and which extends to every element of the crime charge including "intent" the
presumptuous intent, was already implied conclusively to the jury, notwithstanding
the defendant prove by preponderance of the evidence that there was a reasonable
explanation or excuse for the existence of the extreme emotional distress.    An
affirmative defense under 11 Del. C. Section 641.  Petitioner submits, that at this
point in time, during his trial and before the jury rendered their verdict, the only
permissible presumption which could legally be considered by the jury was the
"overriding presumption of innocence" and therefore, it is more than fair assessment
that the only burden of proof, was or should have been the burden which rested on
the State to find the defendant guilty beyond a reasonable doubt.

See; In Re Winship, supra., there the Court stated:

    "Lest there remain any doubt about the constitutional stature of reasonable
doubt standard, we explicitly hold that the due process clause protects the accused
against conviction except upon proof beyond a reasonable doubt of every fact necess-
ary to constitute the crime with which he is charged." Id., at 364, 90 S.Ct. at 1073
(Emphasis added).

    Given these instructions, Trial Transcripts D-206-08, D-229-31, as clearly
evidenced on the face of the record supporting Petitioner's claims in this Amended
Petition for Writ of Habeas Corpus pursuant to Title 28 U.S.C. Section 2254.  There
is no doubt that reasonable jurors must have and did interpret the impermissible
presumption as claimed herein by Petitioner as conclusive (dispite the language
contained under 11 Del. C. Sec. 306(a) and (e), or as shifting the burden of
persuasion, relieving the State of proving every element (Namely intent), of the
offenses beyond a reasonable doubt, violating the Fourteenth Amendment of the United
States Constitution within the meaning of Sandstrom v. Montana, 442 U.S. 518, 99 S.Ct.
2450, 61 L.Ed.2d 39 (1979), Morisette v. United States, 342 U.S. 246, 72 S.Ct. 240,
96 L.Ed. 288 (1952); Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d
508 (1975).

    Finally, under the totality of these circumstances as evidenced herein, clearly
supported by the record, and the mere likelihood that the charge as given by the
Trial Judge was misunderstood by the jury unquestionably causes to fall short of the
constitutional requirements set forth in Sandstrom v. Montana, supra.  Therefore,
Petitioner was denied the right to a fair trial, and the Petition before the Court
should be granted.

COUNSELS' FAILURE TO OBJECT: CLAIM D.

Petitioner's claim is that Trial counsels Joseph B. Green and John L. Sullivan provided ineffective assistance of counsel during trial for failing to object to the Trial Judge's inconstitutional jury instructions as outlined in Sandstrom v. Montana, 442 U.S. 510, 61 L.Ed.2d 39. To prevail on this claim, Dickens must first establish that both his attorneys' representation fell below "an objective standard of reason-ableness." Strickland v. Washington, 466 U.S. 668,687-88 (1984). He must then show that there is a reasonable probability that, but for counsels' unprofessional errors, he would have been acquitted. Strickland, 466 U.S. at 695 ("the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt"). In this regard, Dickens must specifically articulate how the result of his trial was affected by both counsels' derelictions. Petitioner asserts both counsels were ineffective at the trial stage for failing to object to Trial Judge's instruction regarding specific errors as outlined in Sandstrom v. Montana, supra. Moreover, Petitioner's present claim of both attorneys ineffective-ness during the trial stage for failing to object to the Trial Judge's charge to the jury was available and known, or should have been known to defense counsels Joseph B. Green and John L. Sullivan during trial. In order to raise the issue in Petitioner's petition, (Dickens) is required to show that consideration of the claim is warranted Robinson v. State, 562 A.2d 1184,1185 (Del. Supr. 1989). Petitioner has adequately made that showing by raising the factual claim of both counsels' failure to object to the Trial Judge's charge to the jury which constitutes ineffective assistance of counsel. Therefore, Petitioner has made a showing of cause for relief from both counsels proced-ural default and prejudice from the claimed violations of his constitutional rights as asserted herein. As a result Petitioner's claim cannot be procedurally barred by Superior Court Criminal Rule 61(i)(3). Therefore, both the Superior and Supreme Court Opinions and Orders affirming Petitioner's convictions is manifestly incorrect. Additionally, Petitioner however, did attempt (three times) to bring this claim before the lower Courts, to explain his failure to present this claim on direct appeal, just as he tenders an explanation now before this Court. In addition, (Dickens) current allegations of ineffective assistance of counsel were raised on postconviction appeal to show that consideration of his claim was "warrented in the interest of justice", Superior Court Criminal Rule 61(i)(2), or that there was a miscarriage of justice

because of a Sixth Amendment constitutional violation that undermined the fundamental legality, reliability, fairness, or all the above in th proceeding leading to the judgment of conviction, Superior Court Criminal Rule 61(i)(5).  Because Petitioner has demonstrated both "cause and prejudice" due to both attorneys' failure to object to Trial Judge's instructions as outlined in Sandstrom v. Montana, supra, and provided the lower Court with sufficient explanation and advances further explanation now to this Court, the Writ should issue in lieu of both trial attorneys Joseph B. Green and John L. Sullivan rendering ineffective assistance of counsel.  A more comprehensive outline regarding the constitutionally infirmed jury charge reviewed in Sandstrom v. Montana, supra, is articulated in Claim C.

BRADY MATERIAL VIOLATION: CLAIM E:

Comes now the Petitioner to assert that the State failed to disclose exculpatory evidence in a timely manner.  The withholding of the eyewitness's statements were important to the defense.  The State was constitutionally bound to disclose this material evidence to the defense.  Failure to disclose the exculpatory evidence prior to trial hindered the defense from investigation, this exculpatory evidence was misplaced by the State until trial.  Trial counsels claimed that the State suppressed this evidence.  Had the defense been given the exculpatory evidence, there is no doubt the first degree murder consideration would have been taken off of the table.  In the United States Supreme Court it was declared that the due process is violated where the State suppresses, after being requested by the defendant, evidence in its possession which was favorable to the accused and material to his guilt or punishment.  Brady v. Maryland, 373 U.S. 83,87, 83 S.Ct. 1194,1196, 10 L.Ed.2d 215,217 (1963).  See: Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972).  "The test of whether evidence is favorable or exculpatory and, therefore, must be disclosed, is whether such evidence could create a reasonable doubt as to the defendant's guilt." United States v. Agurs, 427 U.S. 199,108-12, 96 S.Ct. 2392,2399-2401 (1976).  This is true, however, in Brady the request was specific.  It informed the prosecutor of the exact material the defense desired.  Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known to the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exist, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the Trial Judge.  When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.  Agurs, 472 U.S. at 106, 96 S.Ct. at 2399; Johnson v. State, 607 A.2d 1173,1176 (Del. Supr. 1992); and Michael v. State, 529 A.2d 752,755 (Del. Supr. 1987).

In Dickens v. State, 437 A.2d 159 (Del. Supr. 1981), Trial counsels argued that the request was made with specifics in the discovery request.  The Delaware Supreme Court upheld Dickens' conviction and sentence when the record and briefing clearly satisfied the inquiry involving the due process requirement of the Fifth and Fourteenth Amendments of the United States Constitution.  Lance v. State, 600 A.2d 337 (Del. Supr. 1991) and United States v. Perdomo, 929 F.2d 967 (3rd Cir. 1991).

Rule 404: Character evidence not admissible to prove conduct; exception, other crimes:

 (a) Character evidence generally.  Evidence of a person's character or a trait
   of his character is not admissible for the purpose of proving that he acted
   in conformity therewith on a particular occasion, except:

 (1) Character of accused.  Evidence of a pertinent trait of his character
   offered by an accused, or by the prosecutor to rebut the same;

 (2) Character of victim.  Except as otherwise provided by statute evidence of
   a pertinent trait of character of the victim of the crime offered by an
   accused, or by prosecution to rebut the same, or evidence of a character
   trait of peacefulness of the victim offered by the prosecution in a homicide
   case to rebut evidence that the victim was the first aggressor;

 (3) ....

 (b) Other crimes, wrongs or acts.  Evidence of other crimes, wrongs or acts is
   not admissible to prove the character of a person in order to show that he
   acted in conformity therewith.  It may, however, be admissible for other
   purposes, such as proof of motive, opportunity, intent, preparation, plan,
   knowledge, identity or absence of mistake or accident.

Delaware Uniform Rules of Evidence, Art. IV, R.404(a)(1-2) and 3(b).


  The Petitioner was denied due process of law by the State's suppression of
evidence before his trial began.  The proceeding must commence again from the stage
at which the Petitioner overreached.  "the denial of due process of law vitiated
the verdict and sentence." Rogers v. Richmond, 365 U.S. 534,545, 81 S.Ct. 735, 5
L.Ed.2d 760 (1961).  The suppression of exculpatory evidence violated his Brady
right to due process, and he should receive a new trial on the issue of punishment
but not on the issue of guilt or innocence.  Considerations should have been given
since Petitioner claimed an affirmative defense which he sought to prove that there
were mitigating circumstances.  During trial, defense counsel sought to prove the
defense of extreme emotional distress when in actuality Petitioner and trial counsels
differed on defense strategy.

  According to Culombe v. Connecticut, 367 U.S. 588,621, 81 S.Ct. 1860, 6 L.Ed.
2d 1037 (1961),  "The verdict is not saved because other competent evidence would
support it."

  In the instant case, it was stated: "in order to establish a due process
violation, defendant must show:  (1) that the State was constitutionally required
to disclose the evidence to him; (2) that the State did not disclose the evidence

to him until just prior to or during trial; and (3) that such late disclosure prevented him from effectively presenting evidence at trial or from conducting a necessary investigation." United States v. Kaplan, 554 F.2d 577, 580 (3rd Cir. 1977). The requirement for due process is satisfied when defense makes a specific request as seen in Brady, it was missing in Agurs. There are situations in which evidence is obviously of substantial value to defense that elementary fairness requires that prosecutor disclose it to defendant even without specific request. Although attorney for sovereign must prosecute the accused with earnestness and vigor, he must always be faithful to his client's overriding interest that justice shall be done. Berger v. United States, 295 U.S. 78,88, 55 S.Ct. 629,633, 79 L.Ed. 1314 (1935). This description of the prosecution's duty illuminates the standard of materiality that governs his obligation to disclose exculpatory evidence. Petit-ioner never asked the State to deliver the whole file to him.

Petitioner believes that the following standards for determining materiality for disclosure purposes should have considered: (1) evidence which may be merely helpful to the defense; (2) evidence which raised a reasonable doubt as to the defendnat's guilt; and (3) evidence which is of such a character as to create a substantial likelihood of reversal. Comment, Materiality and Defense Requests: Aids in Defining the Prosecutor's Duty of Disclosure, 59 Iowa L. Rev. 433,445 (1973). As far as reasonable doubt had the State disclosed the seven-inch steak knife then an investigation and inspection would have been done to learn the location of the knife as well as questioning any eyewitnesses as to whether any of them noticed the deceased victim in possession of one of the seven-inch steak knives. Another thing which was misplaced was the notes which the police officer referred to while testifying on the stand at trial concerning his questioning the Petitioner. Petititoner believes that his testimony was prejudicial and was in fact also Brady material, or "Jencks material". Jencks v. United States, 335 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957). The Jencks rule as adopted by the Supreme Court of Delaware in Hooks v. State, 416 A.2d 189 (Del. Supr. 1980), was not modified by enactment of Rule 612(b). Lance v. State, 600 A.2d 337 (Del. Supr. 1991); and Delaware Uniform Rules of Evidence, Art. V, Rule 612(b).

While there is no requirement for the State to identify Jencks material in pretrial discovery, the State has a duty to provide a witness's Jencks' statement when the witness is tendered for cross-examination. Lance v. State, supra, states: "Any portion withheld over objection shall be preserved and made available to the appellate court in the event of an appeal. If a writing or object is not produced, made available for inspection or delivered pursuant to order under this rule, the

Court shall make any order justice requires, but in criminal cases if the prosecution elects not to comply, the order shall be one striking the testimony or, if the court in its discretion determines that the interests of justice so require, declaring a mistrial." Delaware Uniform Rules of Evidence, Art. V., R.612(c).

Then there was the eyewitness's statement which the State conceded that it probably had a duty under Brady to disclose. It is believed that the Petitioner was prejudiced because defense (1)never had the yeewitness's name along with his statement (2) never had an opportunity to interrogate the eyewitness prior to trial, and (3) the continuance as well as the cross-examination could not satisfy the preparation for trial which was foregone at such late stages. The eyewitness's statement, a seven- inch knife, the "Jencks" material which the police officer referred to during trial, and Judge's denial of the deceased victim's criminal history record which would have created reason-able doubt. In 1980 (the year of the Petitioner's trial). an investigation would have revealed that the deceased victim was sentenced on weapon charges involving the stabbing of her estranged husband over forty times with a knife. This occurred in 1977 resulting in her losing the custody of her children while being incarcerated. Trial Judge denied the defense counsels' attempt to introduce the deceased victim's rap sheet as well as denying the two requests for mistrial. In the pretrial discovery it was requested with specifics in regards to weapons and during trial a request was made to present the rap sheet of the deceased victim since throughout the entire trial the prosecutor felt a need to keep interjecting the stature of the Petitioner to the jury. A Plain Error Review was never done in the courts below and during trial the Trial Judge denied the only opportunity to bring this in clear view. Delaware Supreme Court will generally only review questions on appeal that were fairly presented during trial for decisions unless otherwise required in the interest of justice. Supreme Court Rule 8; Johnson v. State, 607 A.2d 1173,1176 (Del. Supr. 1992); and Probst v. State, 547 A.2d 114,119 (Del. Supr. 1988).

Petitioner respectfully request that this case be remanded to the lower courts for further proceedings, to consider the nature of harm caused to Dickens' by the Brady violation which occurred. Jurisdiction in this matter shall be retained pursuant to Supreme Court Rule 19(c).

INEFFECTIVE ASSISTANCE OF COUNSEL UNDER BRADY: CLAIM F.

Comes now, Petitioner to assert his challenge that trial counsels were ineffective during pretrial, trial and direct appeal stages.  Trial counsels' performance fell below an objective standard of reasonableness.  Delaware courts have stated, "that a claim of ineffective assistance of counsel can constitute 'cause' under Superior Court Rule 61(i)(3), however, to prevail on the claim a petitioner must establish:  1) that the attorney's representation fell below an objective standard of reasonableness; and 2) but for counsel's unprofessional errors, the outcome of the trial would have been different."  Lewis v. State, 416 A.2d 208 (Del. Supr. 1980); and Cook v. State, 758 A.2d 933 (Del. Supr. 2000).  Trial counsels failed to communicate and discuss the case with Petitioner, to conduct discovery, to interview witnesses or conduct discernable investigation, prior to trial, no pretrial motions to suppress evidence were made, counsel failed to file other fundamental motions to competent conduct of a criminal defense, counsel failed to object, and object correctly to admission of incompetent and damaging evidence on numerous occasions, counsels failed to file a bill of exceptions though he represented that he would.  Trial counsels failed to interview and call eyewitnesses resulted in Petitioner being unable to participate in defense strategy.

Trial counsels alleging that the State failed to disclose the eyewitness's statement in a timely manner does not excuse his actions.  During trial, defense was offered a continuance by Trial Judge instead of granting the request for mistrial.  It was justifiable for the Trial Judge to invite him to do so and counsels proceeded without consulting with Petitioner then presenting no argument or evidence for mitigation during the punishment phase.

Trial counsels elected not to interview eyewitnesses to learn whether or not his testimony supported the defense of extreme emotional distress, or whether the eyewitness saw the deceased victim with the knife in her possession that would support the Petitioner claim of self-defense.  To never investigate the possibility permitted this contention to go unattended.  This was prejudicial to the Petitioner case especially since a vital piece of physical evidence had been disclosed earlier in the trial (three 7-inch steak knives).  Without questioning the eyewitness this allowed the State's case to grow stronger.  From this stage any argument to support a self-defense claim was lost.  The absence of the continuance disallowed any self-defense claim which in turn kept out the deceased victim's rap sheet and criminal

history, the supporting claim that the State withheld exculpatory evidence under Brady, and the testimony of the eyewitness.  Trial counsels had a duty to present a reasonable doubt to show the affirmative defense claim.  This would have helped in establishing the defense of choice by factual basis including the pretrial investigations in material evidence which potential witnesses, including eyewitnesses, might provide as well as the manner in which they might be helpful to the defense. Strickland v. Washington, 466 U.S. 668,685, 104 S.Ct. 2025,2063 (1984); Aguillar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

Trial counsel failed to interview other witnesses or call any witnesses to testify in Petitioner's behalf and he failed to conduct discovery investigation and inspection into crucial matters, or schedule pretrial hearing on motion to suppress within a reasonable time before trial in order to pursue one line of defense over another.  This course of action was a clear abdication of counsel's responsibility to effectively advocate Petitiober's cause.  Briscoe v. State, 606 A.2d 103 (Del. Supr. 1992); Chambers v. Armontrout, 907 F.2d 825 (8th Cir. 1990); Commonwealth of Pennsylvania v. Torres, 477 A.2d 1350 (1984); Beavers v. Balkcom, 636 F.2d 114 (5th Cir. 1981); and Gaines v. Hooper, 575 F.2d 1147 (5th Cir. 1978).

There were fundamental procedural ommissions by Trial counsels, coupled with what became evidently a lack of familiarity with facts of Petitioner's case, as indicated by a lack of amount of preparation and degree of skill reasonably required by counsels in a criminal trial.  When viewed along with Trial counsels' reputation as criminal defense attorneys and specific lapses before and after trial, it could be said that Trial counsels were likely to render and in fact rendered effective assistance to Petitioner.  Daniels v. Maggio, supra, 669 F.2d 1075 (1982); and Herring v. Estelle, supra, 491 F.2d 125 (5th Cir. 1974).

Trial counsels conceded that there was no reasonable doubt concerning only factual issues in dispute, and such conduct by counsels failed to hold the State to its burden of persuading the jury that Petitioner was guilty, thus, depriving him of his due process and a fair trial.  Petitioner was instructed by Trial counsels not to testify on his own behalf based on inappropriate conflict concerns for claiming that the deceased victim had been the aggressor.  These claims required an evidentiary hearing to resolve the question of ineffective assistance of counsel and conflict of interest claims.  U.S. v. McKinnon, 995 F.Supp. 1404 (M.D. Fla. 1998);

Potter v. State, 547 A.2d 595, appealed and remanded, 550 A.2d 35 (Del. Supr. 1988); and Stacey v. State, 358 A.2d 379 (Del. Supr. 1976).  Trial counsels' failure to consult with Petitioner showed poor understanding of the case.  Their failure to investigate Petitioner's contentions as well as whatever inspection and investigation during pretrial stages cannot be procedurally barred and should be considered as establishment of ineffective assistance of counsel claim.  Johnson v. State, 794 A.2d 654 (2002); and White v. Godinez, 143 F.3d 1049 (7th Cir. 1998).

Petitioner contends that Trial counsels failed to confer with him, to inspect discovery and investigate crime scene.  Trial counsels should have interviewed witnesses as well as developed a working relationship with him in their first murder case.  This amounted to incompetent representation and required a possible substituted appointment of counsel.  Crandell v. Bunnell, 144 F.3d 1213 (9th Cir. 1998); U.S. v. Gray, 878 F.2d 702 (3rd Cir. 1989); and it was suggested by counsel in Smith v. Redman, C.A. No. 90-59-JLL. ("Magistrate's Report and Recommendation").

Trial counsels were offered a continuance twice at trial in the interest of justice not because they ever requested one.  They gave a half-hearted effort in requesting the Court to grant a mistrial.  Discovery was misplaced at the pretrial stage relieving the State of its responsibility to prove its case beyond a reasonable doubt.

State prosecution conceded that it probably had a duty under Brady to disclose the eyewitness's statement to defense, but trial counsel again failed to present a convincible argument to either Trial Judge or Supreme Court Justices which would constitute either a mistrial or reversal on direct appeal.  Brady v. Maryland, 373 U.S. 83 (1963).  "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the Sate's accusations. The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process."  Chambers v. Mississippi, 410 U.S. 284,294 (1973); and In re Oliver, 333 U.S. 257,273, 68 S.Ct. 499,507, 92 L.Ed. 682 (1948), identified these rights as among the minimum essentials of a fair trial:

> "A person's right to reasonable notice of a charge against him and an oppor-
> unity to be heard in his defense- a right to his day in court- are basic in
> our system of jurisprudence; and these rights include, as a minimum, a right
> to examine the witnesses against him, to offer testimony and be represented
> by counsel."

Trial counsels were not competent and they should have elected to raise the claim of ineffective assistance of counsel on direct appeal by stating this at trial.

Strickland v. Washington, 466 U.S. 668,685,687-88,695, 104 S.Ct. 2052,2064-74, 80 L.Ed.
2d 674 (1984); U.S. v. Galloway, 56 F.3d 1259 (10th Cir. 1995); Dillion v. Duckworth,
751 F.2d 895 (7th Cir. 1985).  This is highly unlikely unless there is a conflict of
interest claim because this may be viewed, otherwise, unfavorable to their professional
careers.  Counsels are not required to raise their own ineffectiveness.  Nichols v. U.S.,
75 F.3d 1137 (7th Cir, 1996).  "These standards require no special amplification in order
to define counsel's duty to investigate, the duty at issue.  As the Court of Appeals
concluded, strategic choices made after thorough investigation of law and facts relevant
to plausible options are virtually unchallengeable; and strategic choices made after
less than complete investigation are reasonable professionable judgments support the
limitations on investigation.  In other words, counsel has a duty to make reasonable
decision that makes particular investigations unnecessary.  In any ineffectiveness case,
a particular decision not to investigate must be directly assessed for reasonableness
in all the circumstances, apply a heavy measure of deference to counsel's judgments."
Strickland v. Washington, 466 U.S. 668, at 690-91.

   "Accordingly, the appropriate test for prejudice finds its roots in the test for
materiality of exculpatory information not disclosed to the defense by the prosecutor,
United States v. Agurs, 427 U.S., at 104, 112-113, 96 S.Ct., at 2397, 2401-2402, and
in the test for materiality of testimony made unavailable to the defense by Government
deportation of a witness, United States v. Valenzuela-Bernal, supra, 458 U.S., at 872-
874, 102 S.Ct., at 3449-3450.  The defendant must show that there is a reasonable
probability that, but for counsel's unprofessional errors, the result of the proceed-
ing would have been different.  A reasonable probability is a probabilty sufficient
to undermine confidence in the outcome."  Strickland v. Washington, 466 U.S. 668, at
694.   It is believed that had this been a judge trial then we could conclude that as
an officer of the court with his understanding of the law maybe a judge would have been
satisfied with exculpatory material being withheld from the defense.  I doubt very
seriously if any reasonable juror might feel the same, therefore, the benefit of doubt
should be awarded to the accused.

   Even still trial counsel's failure to read and review documents disclosed by the
State, which contained potentially exculpatory materials, was ineffective assistance
of counsel.  U.S. v. Myers, 892 F.2d 642 (7th Cir. 1990).  For the reasons expressed
Petitioner respectfully request this case be reversed and remanded to the Delaware
courts for an evidentiary hearing to determine the extent of prejudice.

INEFFECTIVE ASSISTANCE OF COUNSEL UNDER SANDSTROM: CLAIM G:

As noted, in Claim D., supra., Petitioner's claim was whether Trial/Appellate counsels provided ineffective assistance of counsel during the trial stage for failing to object to Trial Judge's unconstitutional jury instructions as outlined in Sandstrom v. Montana, 442 U.S. 510, 61 L.Ed.2d 39, 99 S.Ct. 2450 (1979).  The next part of the inquiry looks to whether Petitioner's Appellate counsels were ineffective for failing to raise the Sandstrom error on direct appeal, and whether due to this failure Petitioner has demonstrated sufficient "cause and prejudice" to have his claims addressed on their merits.  In the State's Motion to Affirm (Exhibit 8-A8), page 3.  Respondent, Richard E. Fairbanks, Jr., at 3., in part avers that, "In his postconviction motion, Dickens simply ignored his procedural default; he proffered no 'cause' for his failure to object to the instruction.  On appeal, for the first time, Dickens claims that he should be excused from the procedural default because all of his attorneys were ineffective.  Op. Br. at 11 (Exhibit 14-A14).  Although ineffective assistance of counsel can establish 'cause', See: Murray v. Carrier, 477 U.S. 478 (1986), Dickens cannot raise this time on appeal.  Supreme Court Rule 8; Duross v. State, 494 A.2d 1265 (Del. Supr. 1985).  Thus, dismissed was entirely proper.  See: Jones v. State, De. Supr., No. 285, 1989, Moore, J. (July 31, 1989)(Order)(Exhibit 8-A8)."

In the first instant, the Petitioner asserts, his challenge to Trial/Appellate counsels of being ineffective both for failing to object to, during trial, the Trial Judge's unconstitutional jury instructions as outlined in Sandstrom v. Montana, 442 U.S. 510, 61 L.Ed.2d 39, 99 S.Ct. 2450 (1979).  (See Petitioner's Claim H., supra.), and for failing to raise the Sandstrom error on direct appeal which could have been, but was not, raised on direct appeal to the Supreme Court of Delaware because neither Joseph B. Green or John L. Sullivan raised such claims.  Therefore, Petitioner in his pro se "postconviction" appellate stage, had to establish both "cause" for not raising the issues on direct appeal and actual "prejudice" resulting from defense counsels Joseph B. Green and John L. Sullivan rendering ineffective assistance of counsel.  Additionally, on appeal in Petitioner's postconviction proceedings Dickens, however, did raise before the Delaware Supreme Court explaining his prior failure (while being represented by counsels Green and Sullivan) for not objecting during trial to the Trial Judge's unconstitutional jury instructions and failing to raise the Sandstrom error, supra, on direct appeal, and Petitioner again tenders an adequate explanation now before this Honorable U.S. District Court in this habeas proceeding.  Therefore, Delaware Supreme Court Rule 8 was inapplicable to procedurally bar Petitioner's claims of ineffective assistance of counsel from being addressed on their respective

- 24 -

merits on appeal in a postconviction proceeding after Petitioner's defense attorneys
as indicated above had rendered ineffective assistance of counsel both during trial
and on dircet appeal.  Accordingly, the Petitioner has shown that considerations of
his Ineffective Assistance of Counsel Claim was "warranted in the interest of justice",
and that there was a miscarriage of justice because of a Sixth Amendment constitutional
violation that undermined the fundamental legality, reliability, integrity, and fair-
ness of the proceedings leading to the judgment of his conviction.  Moreover, in the
Petitioner's former habeas petition he provided the Superior Court and the Supreme
Court with sufficient "cause" for his failure to present his ineffective assistance
of counsel claim in his Rule 61 Motion to the Superior Court.  Petitioner was assisted
in preparing his Rule 61 Motion for postconviction relief by the paralegal Francene
Kobus, employed at the time at Delaware Correctional Center, who worked at the law
library.  She is now employed by the Delaware Attorney General's Office as was expressed
in the former writ of habeas corpus, 28, U.S.C. Sec. 2254 as being described, "an agent
with the Attorney General's Office of the State of Delaware."  See also Appellant's
Opening Brief, at 11 raising similar claims to the Supreme Court that the Supreme
Court failed to address on its merits.

    Furthermore, it has been stated; "Representation of a criminal defendant entails
certain basic duties.  Counsel's function is to assist the defendant and hence counsel
owes the client a loyalty, a duty to avoid conflicts of interest." Strickland v.
Washington, 466 U.S. 668,690, 104 S.Ct. 2052,2065 (1984); Cuyler v. Sullivan, 446 U.S.
at 346, 90 S.Ct. at 1717.

    Petitioner was directed by U.S. District Court Judge Sue L. Robinson to return
to the Delaware courts to exhaust the available state remedies on this occasion and
prior to this time back in 1982.  Dickens v. Redman, C.A. No. 91-90-SLR; Dickens v.
Redman, C.A. No. 82-202-JLL.  They were both dismissed without prejudice for failing
to exhaust state remedies.  Upon returning to the Delaware courts to have those
unexhausted claims presented for considerations the lower courts instead of addressing
them they barred them.  Dickens has afforded the Delaware courts the opportunity to
addressed the claims of ineffective assistance of counsel which satisfies his exhaust-
ion requirements, therefore, he has satisfied "cause" for this claim.

CONCLUSION:

WHEREFORE, based upon the above reasons and authorities, the Petitioner respectfully ask this Court to vacate his convictions and sentences.

Respectfully Submitted,

*Laurence B. Dickens*

Lawrence B. Dickens, Pro Se
Sussex Correctional Institution
Georgetown, Delaware  19947

Dated: 12/20/06

– 26 –

FM: Barbara L. Dickes, Madison D
SUSSEX CORRECTIONAL INSTITUTION BLDG. Madison D
P.O. BOX 500    #124577D
GEORGETOWN, DELAWARE 19947

ORIGINAL

U.S. States District Court
for Delaware, Clerk
Lock Box 18, 844 King Street
Wilmington, DE

19801