**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **LAWRENCE B. DICKENS,** | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Civ.Act.No. 06-790-SLR |
| | ) |
| **RICHARD KEARNEY**, Warden | ) |
| and **JOSEPH R. BIDEN, III**, Attorney | ) |
| General for the State of Delaware | ) |
| | ) |
| Respondents. [1] | ) |

**ANSWER**

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

On August 16, 1979, petitioner Lawrence B. Dickens walked into the Wilmington bus station, then located at Fourth and Market Streets, in search of his girlfriend, Elmira Handy. Spotting Elmira and Myrtis Handy, her mother, at the ticket window, Dickens approached the pair and requested to speak with Elmira alone in order to dissuade her from leaving him. Although Mrs. Handy insisted Elmira remain with her, Dickens succeeded in conversing briefly with Elmira alone. Shortly thereafter, Mrs. Handy approached the couple. As Mrs. Handy approached, Dickens produced a pistol and aimed it at the floor in order to scare Mrs. Handy. However, when Mrs. Handy continued approaching the couple, Dickens aimed and fired the gun, hitting Mrs. Handy in the chest and fatally wounding her. Dickens continued to fire the pistol, subsequently injuring Elmira and a bystander.

---

[1] *See* Fed.R.Civ.P. 25(d)(1). Attorney General Joseph R. Biden III, assumed office on January 2, 2007, replacing former Attorney General Carl C. Danberg, an original party to this case.

Dickens was charged with first degree murder, two counts of attempted first degree murder, and possession of a deadly weapon during the commission of a felony. He did not deny the shootings, instead claiming that he had acted under extreme emotional distress which, if proven by him, would reduce his murder charge to manslaughter. 11 Del. C. §641. On February 20, 1980, after a trial lasting 10 days, a Superior Court jury convicted Dickens of first degree murder for the killing of Mrs. Handy, attempted first degree murder for the shooting of Elmira Handy, first degree assault for the shooting of the bystander, and possession of a deadly weapon during the commission of a felony. On direct appeal, Dickens' convictions were affirmed by the Delaware Supreme Court. *Dickens v. State*, 437 A.2d 159 (Del. 1981) (*Dickens I*).

During Dickens' trial, the Superior Court judge instructed the jury, in part, as follows:

> When I say the defendant must be shown to have caused the death, I mean that the defendant, by his voluntary act, must have brought about the death in question and that the death would not have occurred but for the act of the defendant.

> You must also find that the defendant acted intentionally. That is, it must have been the defendant's conscious object or purpose to cause the death in this case.

> In considering whether or not the defendant acted intentionally, I call your attention to another statute, which reads in pertinent part this way: "The defendant's intention . . . at the time of the offense for which he is charged may be inferred by the jury from the circumstances surrounding the act he is alleged to have done. In making the inference permitted by this section, the jury may consider whether a reasonable man in the defendant's circumstances at the time of the offense would have had or lacked the requisite intention . . . ." [sic] "When the defendant's intention . . . is an element of an offense, it is sufficient to establish a *prima facia* case for the State to prove circumstances surrounding the act which the defendant is alleged to have done from which a reasonable juror might infer that the defendant's intention . . . was of the sort required for commission of the offense."

> Likewise, in considering the defendant's state of mind, you should be aware that every person is presumed to intend the natural and probable consequences of his act, and if a voluntary, willful act has a direct tendency to destroy life, the natural conclusion is that the taking of life was intended.

> Testimony has been offered to negate the element of intent required to convict of Murder in the First Degree. In determining the guilt or innocence of the defendant on the charge of First Degree Murder, you must consider whether or

2

> not that evidence has raised a reasonable doubt as to the existence of the intent to kill. If the evidence raises such a doubt, then you must find the defendant not guilty of Murder in the First Degree.
>
> If after considering all of the evidence you find that the State has established beyond a reasonable doubt that the defendant, Lawrence B. Dickens, acted in such a manner as to satisfy all the elements which I have just stated at or about the date and place stated in the Indictment, you should find the defendant guilty of Murder in the First Degree. If you do not so find, you cannot find the defendant guilty of Murder in the First Degree, but you may consider whether he is guilty of what is known as a lesser included offense. [Emphasis added].

*State v. Dickens*, 602 A.2d 95, 100-01 (Del. Super. 1989) (*Dickens II*). In April 1989, Dickens moved for state post-conviction relief under Superior Court Criminal Rule 61. *See Dickens II*. According to Dickens, the trial judge, in the underlined portion of the above instruction, improperly told the jury that the law presumes, rather than infers, that a person intends the ordinary consequences of his voluntary act. Thus, as Dickens contended, the jury may have interpreted the instruction as being a conclusive presumption or to shift the burden of persuasion, relieving the prosecution of its burden of proof. The Superior Court denied Dickens' motion on two grounds: the motion was untimely under the provisions of Criminal Rule 61(i)(1) and, in the alternative, consideration of the claim was not warranted under Rule 61(i)(5). On Dickens' appeal to the state supreme court, the Superior Court decision was affirmed. According to the Delaware Supreme Court, Dickens' motion was procedurally barred for two reasons: it was untimely under Rule 61(i)(1), as the Superior Court had held, and Dickens' failure to object at trial to the instruction precluded review under Criminal Rules 30(a) and 61(i)(3). *Dickens v. State*, 1990 WL 43318 (Del. Mar. 23, 1990) (Exhibit A) (*Dickens III*).

In February 1991, Dickens filed for a federal writ of habeas corpus. *Dickens v. Redman*, Civ. Act. No. 91-90-SLR (D.Del. 1993) (D.I.2 at Ex. 2) (*Dickens IV*). This Court dismissed Dickens' petition because he failed to exhaust state remedies on certain claims of ineffective assistance of counsel. *Dickens IV* at 10. In 1994, Dickens again filed for postconviction relief. *State v. Dickens*, 1994 WL 145988 (Del. Super. 1994) (*Dickens V*) (Exhibit B). Superior Court ruled that consideration of all of Dickens' claims was barred under Superior Court Criminal Rules

3

61(i)(1), (i)(2), (i)(3), and (i)(4).  *See Dickens V.* The state supreme court later affirmed the judgment of the Superior Court on appeal.  *Dickens v. State*, 1994 WL 466126 (Del. 1994) (*Dickens VI*) (Exhibit C).

After waiting eight years, Dickens filed his third motion for postconviction relief in November 2002.  (D.I. 2 at F-1).  Superior Court denied this motion, ruling that Dickens' motion was time-barred.  *Dickens v. State*, 2003 WL 1922507 (Del. 2003) (*Dickens VII*) (Exhibit D).  The state supreme court affirmed that decision in April 2003.  *See Dickens VII.*  In December 2006, Dickens again filed for federal habeas relief.

Discussion

In his petition for federal habeas relief, petitioner raises five grounds for relief:  the trial court erred by giving an instruction to the jury that unfairly prejudiced Dickens; his attorneys provided constitutionally defective assistance by not objecting to the offending jury instruction; the State did not disclose exculpatory evidence to the defense as required by *Brady v. Maryland*; his attorneys were generally ineffective; and his appellate counsel was ineffective in failing to raise Dickens' jury instruction claim on appeal.  Because Dickens has raised these claims before the Delaware Supreme Court, each has been properly exhausted.  Dickens, however, is not entitled to relief because the claims presented in his petition are untimely under 28 U.S.C. §2244(d) and are, additionally, without merit.

Because Dickens' petition was filed in December 2006, it is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA") signed into law on April 24, 1996.  *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding that AEDPA applies to "such cases as were

4

filed after the statute's enactment."); *Lawrie v. Snyder*, 9 F. Supp.2d 428, 433 n. 1 (D.Del. 1998). [2]
The Delaware Supreme Court affirmed Dickens' conviction and sentence in 1981. *See Dickens I.*
Because Dickens' convictions became final prior to the enactment of AEDPA, his habeas petition
must have been filed prior to April 24, 1997 to be timely. *See Burns v. Morton*, 134 F.3d 109,
111-12 (3d Cir. 1998). Dickens' petition, dated December 27, 2006, is obviously filed past the
April 1997 deadline. The petition is thus untimely and must be dismissed, unless the time period
can be statutorily or equitably tolled. *See Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

The tolling mechanism of §2244(d)(1) cannot save Dickens' petition from the running of
the limitations period. *See* 28 U.S.C. §2244(d)(2). When applicable, §2244(d)(2) tolls the one-
year period of §2254(d)(1) during the time that a properly filed state postconviction action is
pending in the state courts. Section 2244(d)(2) provides only that the limitations period is tolled
for the time that a motion for state postconviction relief is pending, but it does not stop the
limitations clock from running until all state postconviction motions are decided. *See Marvel v.
Dep't of Correction*, Civ. Act. No. 97-568-LON, order at ¶9 (D.Del. Nov. 17 1998). Dickens' first
two postconviction motions did not serve to toll the limitations period, because both were filed,
decided, and affirmed well before AEDPA was enacted. State postconviction proceedings
terminated prior to April 24, 1996 are not relevant to statutory tolling analysis. *Pauls v. Kearney*,
2002 WL 31005827, at *3 n. 3 (D. Del. 2002) (Exhibit E). Dickens' 2002 postconviction motion
similarly fails to toll the statutory limitations period, as it was filed after the limitations period had
run. *See Milosevic v. Ridge*, 301 F.Supp.2d 337, 346 (M.D.Pa. 2003). Thus the statutory tolling
provisions of §2244(d)(2) are of no aid to Dickens.

---

[2] Dickens does not allege, nor can respondents discern, any reason to believe that the terms of 28
U.S.C. §2244(d)(1)(B)-(D) are applicable.

Of course, as the Court has repeatedly noted, the limitation period might be subject to equitable tolling. *See, e.g., Thomas v. Snyder*, 2001 WL 1555239, at \*3-4 (D.Del. Nov. 28, 2001) (Exhibit F) (describing rule). Equitable tolling, however, applies only where the petitioner "has in some extraordinary way been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). Here, Dickens has failed to allege or demonstrate any extraordinary circumstances that prevented him from filing his petition with the Court in a timely manner. Dickens has raised each of the claims he advances here several times before the state courts. Accordingly, Dickens cannot credibly allege that the legal arguments or facts were unavailable to him during the limitations period. In short, Dickens' claims are untimely under §2244(d), and there is no basis upon which any relevant time should be excluded by virtue of the equitable tolling doctrine. Accordingly, the petition is untimely and must be dismissed. *See Miller v. Marr*, 141 F.3d 976, 977-78 (10th Cir. 1998).

Alternatively, Dickens has failed to show that he is entitled to relief on the merits. As explained by the Third Circuit, a federal court's consideration under §2254(d)(1) of a habeas petitioner's claim proceeds in two steps. The court "must first identify the applicable Supreme Court precedent and determine whether it resolves the petitioner's claim." *Werts v. Vaughn*, 228 F.3d 178, 197 (3d Cir. 2000). *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). To do so, "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Werts*, 228 F.3d at 197. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) ("A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous."). Thus, if the Supreme Court has not established "a clear or consistent path" of jurisprudence for state courts to

follow, the prisoner is not entitled to relief. *Lockyer*, 538 U.S. at 72. When looking to Supreme Court precedent, the court "must decide the level of specificity at which [it] decide[s] whether the state decision is contrary to, or unreasonably applies, that precedent. . . . Supreme Court jurisprudence addressing §2254(d)(1) has established that determining the 'clearly established' benchmark should be done on a case-specific level." *Fischetti v. Johnson*, 384 F.3d 140, 148 (3d Cir. 2004). Under §2254(d)(1), "the Court views its precedents in their particular factual settings. The touchstone precedents are not to be examined by looking to broad pronouncements or generative principles in the opinion. The 'materially indistinguishable' test presupposes a fact-specific analysis of the Supreme Court case law." *Fischetti*, 384 F.3d at 148 (citing cases).

"If [the court] determine[s] that the state court decision is not 'contrary to' the applicable Supreme Court precedent, then [the court is] required to advance to the second step in the analysis -- whether the state court decision was based on an 'unreasonable application of' Supreme Court precedent." *Werts*, 228 F.3d at 197. In performing this inquiry, the court is "not authorized to grant habeas corpus relief simply because [it] disagree[s] with the state court's decision or because [it] would have reached a different result if left to [its] own devices." *Werts*, 228 F.3d at 197. Instead, the state court's application of Supreme Court precedent must have "resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Werts*, 228 F.3d at 197. And as with the inquiry under the "contrary to" prong of the statute, "in analyzing habeas claims for unreasonable application of the law, the Supreme Court has looked at its own baseline precedents through a sharply focused lens." *Fischetti*, 384 F.3d at 149. The decisions of state and lower federal courts are relevant in assessing the reasonableness of the state court decision at issue, but "cases not decided by the Supreme Court do not serve as the legal benchmark against which to compare the state decision." *Fischetti*, 384 F.3d at 149. Finally, in

this context, Supreme Court precedent involving the interpretation of federal statutes is not enough; the relevant body of decisional law is that interpreting the federal Constitution. *Early v. Packer*, 537 U.S. 3, 10 (2002) (Court's holdings on non-constitutional issues are not "relevant to the §2254(d)(1) determination"); *Johnson v. Carroll*, 369 F.3d 253, 259-62 (3d Cir. 2004).

*Claim One: Jury Instruction claim*

Dickens first argues that a portion of the charge read to the jury in his trial improperly told the jury that the law presumes, rather than infers, that a person intends the ordinary consequences of his voluntary act. According to Dickens, the relevant portion of the instructions "had the effect of shifting the burden of persuasion" to him. *See Sandstrom v. Montana*, 442 U.S. 510, 524 (1979). Ultimately, whether Dickens "has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." 442 U.S. at 514. *See Boyde v. California*, 494 U.S. 370, 376-84 (1990).

In *Sandstrom*, the defendant, who admitted killing his victim, argued that because of a personality disorder aggravated by alcohol consumption, he did not kill his victim intentionally or purposely, and therefore, he could not be guilty of deliberate homicide, but of a lesser crime. Though the facts of *Sandstrom* appear similar to Dickens' case since Dickens, while never denying the fact that he killed Myrtis Handy, claimed he was struggling under severe emotional distress, making him guilty not of murder, but only of manslaughter, the similarities end there.

In *Sandstrom*, the jury was instructed "'[t]he law presumes that a person intends the ordinary consequences of his voluntary acts.' They were not told that they had a choice, or that they might infer that conclusion, they were told only that the law presumed." 442 U.S. at 515. In Dickens' trial, the jurors were told that they could infer intent from the circumstances surrounding the murder. Tr. D-206-07. The instruction challenged by Dickens begins with the word "likewise", which connects it to the preceding paragraphs instructing on intent. Moreover, in

8

Dickens' case, the instruction merely stated that the jurors should be aware that "every person is presumed to intend the natural and probable consequences of his act, and if a voluntary, willful act has a direct tendency to destroy life, the natural conclusion is that the taking of life was intended." The first part of the sentence, telling the jury to be aware of the point, when read in conjunction with the instruction that they could infer Dickens' intent from the circumstances, is no more than an implication that they can consider the point in determining his state of mind. The latter half of this sentence explains that such presumption amounts to a permissible inference. An inference is made "by considering other facts and deducing a logical consequence from them." BLACK'S LAW DICTIONARY (8th Ed. 2004). A logical consequence may be interpreted as similar to a natural conclusion, amounting to an inference. As a result, casting the instruction in terms of a "natural conclusion," instead of a mandatory presumption,

> leaves the trier of fact free to credit or reject the inference and does not shift the burden of proof, [and] it affects the application of the "beyond a reasonable doubt" standard only if, under the facts of the case, there is no rational way the trier could make the connection permitted by the inference.

*Ulster County Court v. Allen*, 442 U.S. 140, 157 (1979).

The Superior Court instructed the jury that no emphasis was to be placed on any specific instruction and, conversely, they were to consider all of the instructions as a whole. Tr. D-201-02. Thus, the challenged language was given as a part of the entire jury charge which explicitly reiterated that the State maintained the burden of proving every element of the offense beyond a reasonable doubt and until it was accomplished, the defendant was presumed innocent.

> The defendant, just as every person brought to trial in a criminal proceeding in this State, is presumed to be innocent until his guilt is established to the satisfaction of the jury beyond a reasonable doubt. The burden of proving beyond a reasonable doubt the commission of the offenses rests upon the State. If after carefully considering the evidence you have a reasonable doubt of the the guilt of the defendant, you should give him the benefit of such a doubt and find him not guilty.

9

Tr. D-224. Thus, in light of the entire jury charge, a reasonable juror could have interpreted the instruction to be a more specific example of the proposition that they could adduce Dickens' state of mind from the circumstances surrounding the shooting. Indeed that interpretation is supported by the jury's acquittal of Dickens for attempted murder of the bystander, convicting him instead of first degree assault. If the jury viewed the challenged instruction in the light proposed by Dickens, they would have had no choice but to convict him of attempted murder since by shooting the bystander, the jury would have had to conclude Dickens intended to kill the individual. The mere likelihood that the jury misunderstood the particular instruction is insufficient to warrant relief. *See Boyde*, 110 S.Ct. at 1197-98.

Apparently unlike the jury in *Sandstrom*, Dickens' jury was also told that they could infer his state of mind from the surrounding circumstances and that it was his state of mind that was at issue. The jury was also told, shortly after being read the language about which Dickens complains, that the State had to prove all of the elements of first degree murder in order to find him guilty. Tr. D-207-08. A reasonable juror listening to those instructions would understand that the prosecution had a continuing burden to prove all of the elements of murder beyond a reasonable doubt, and the jury was repeatedly told that the State had to prove the elements of the various offenses beyond a reasonable doubt. The jury apparently understood that since they acquitted Dickens of one count of attempted murder, convicting him of the lesser included offense of first degree assault. Finally, unlike *Sandstrom*, Dickens, by claiming that he had acted under extreme emotional distress, admitted as a matter of law that he had intentionally killed Mrs. Handy. 11 Del. C. § 641; Delaware Criminal Code Commentary 195 (1973) ("[the accused] is admitting that he had killed intentionally"). *See Moore v. State*, 456 A.2d 1223, 1225-26 (Del. 1983) (defense of extreme emotional distress available only for intentional murder, not felony murder); *Duonnolo v. State*, 397 A.2d 126, 130 (Del. 1978) (defense of extreme emotional distress not available if defendant denies

10

involvement). As a result, the instructions in Dickens' trial did not violate the due process clause or, in the alternative, constituted harmless error. *See Fencl v. Abrahamson*, 841 F.2d 760, 770 (7th Cir. 1988); *Potts v. Zant*, 734 F.2d 526, 532-35 (11th Cir. 1984); *Drake v. Francis*, 727 F.2d 990, 997-99 (11th Cir. 1984); *Corn v. Zant*, 708 F.2d 549, 558-60 (11th Cir. 1983); *Rock v. Zimmerman*, 729 F.Supp. 398, 401-09 (M.D. Pa. 1990); *Maselli v. Manson*, 517 F.Supp. 1183, 1189-91 (D. Conn. 1981).

### *Claim Two: Counsel was ineffective for failing to object to the jury instruction*

Dickens next claims that his attorneys were ineffective because they did not object to the offending jury instruction at trial. To prevail on his claim, Dickens must first establish that counsel's representation fell below "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). He then must show that there is a reasonable likelihood that but for counsel's alleged derelictions, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694. This standard, requiring Dickens to "prove both incompetence and prejudice," "although by no means insurmountable is highly demanding." *Kimmelman v. Morrison*, 477 U.S. 365, 381, 382 (1986). Under the first part of the standard, Dickens must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michael v. Louisiana*, 350 U.S. 91, 101 (1955)). *See Darden v. Wainwright*, 477 U.S. 168, 186 (1986). Under the second prong of the test, it is not enough for Dickens to show "some conceivable effect on the outcome of the proceedings," *Strickland*, 466 U.S. at 693; instead, he must demonstrate that the error was sufficiently egregious "to undermine confidence in the outcome." 466 U.S. at 694.

In Dickens' case, there is no reasonable likelihood that a juror would have understood the challenged instruction to be a conclusive presumption or to diminish the State's burden of proof. Indeed, Dickens' acquittal of the count of attempted murder

based on his shooting of the bystander and his conviction on the included offense of first degree assault shows as much: if the instruction had the effect ascribed to it by Dickens, the jury would have automatically concluded he intended to kill the bystander, thus requiring a guilty verdict for attempted murder. Given 1) the totality of the instructions given to the jury; 2) the jury's apparent understanding of the instructions, as evidenced by its conviction of Dickens on a lesser included offense; and 3) Dickens' admission, through raising extreme emotional distress as a defense, that he had intentionally killed Mrs. Handy, he has not established that but for counsel's failures at trial or on appeal, there is a reasonable likelihood of a different result at trial or that his convictions would have been reversed on appeal. *See Waye v. Townley,* 871 F.2d 18, 21 (4th Cir. 1989); *Bates v. Blackburn,* 805 F.2d 569, 577-78 (5th Cir. 1986); *Johnson v. Blackburn,* 778 F.2d 1044, 1049 (5th Cir. 1985); *Church v. Kincheloe,* 767 F.2d 639, 642-43 (9th Cir. 1985); *Riggins v. Butler,* 705 F.Supp. 1205, 1208 (E.D. La. 1989).

Dickens raises, as a separate ground for relief, the claim that his appellate counsel was similarly ineffective for raising this jury instruction claim on appeal. Dickens' claims regarding his jury instructions, however, have been consistently rejected, by the state supreme court in Dickens' numerous actions, as meritless. Accordingly, Dickens' appeallate counsel cannot have been ineffective for failing to raise such frivolous claims. *See, e.g., Diggs v. Owens,* 833 F.2d 439 (3d Cir. 1987).

*Claim Three: The knife and the witness*

Dickens claims that the prosecution failed to disclose exculpatory evidence to the defense as required by the decision of the Supreme Court of the United States in *Brady v. Maryland,* 373 U.S. 83 (1963) – namely the existence of a steak knife found in an overnight bag near his victim and the statement of an eyewitness – and, in doing so,

denied him a fair trial.    The Delaware Supreme Court considered this claim in Dickens'

direct appeal and found:

> We believe that the State did not violate the defendant's right to due process in not informing defendant of the discovery of the steak knife. The record is bereft of any evidence indicating that the State deliberately suppressed this evidence. Defense counsel was informed of the possible existence of the knife by defendant himself and by doctors who examined him. In addition, the State provided the defense with the opportunity to inspect any physical evidence which it had in its possession. It cannot be said, therefore, that the State was hiding the existence of the knife from the defense.

> Furthermore, we disagree with defendant's assertion that the existence of the knife was favorable or material in nature. In light of the defense of extreme emotional distress asserted by defendant and the defense of justification which, defendant claims, he would have asserted had he known about the knife, a knife found in an overnight bag is, as the Trial Judge aptly put it, "meaningless in this kind of setting." The record indicates that the knife did not visibly protrude from the bag. Since defendant could not have seen the knife, it could not have triggered extreme emotional distress or a reaction of self-defense in defendant. Thus discovery of the knife could not create a reasonable doubt as to defendant's guilt and could have no bearing upon either party's case. Under the principles set forth above, the State was not duty-bound to disclose the existence of the knife and did not violate defendant's right to due process.

> With respect to the statement of the eyewitness, the State concedes that it probably had a duty under *Brady, supra,* to disclose this evidence. However, defendant has failed to show that this non-disclosure was so prejudicial as to amount to reversible error. The evidence became available to the defense during trial and was presented to the jury at trial. Defense counsel had the opportunity to cross examine the eyewitness. Furthermore, the Trial Judge offered defense counsel the possibility of a continuance if the defense found that it needed time to develop and evaluate the eyewitness' testimony. While the State may have violated the rule in *Brady*, the defense has not demonstrated that the tardy disclosure prevented it from effectively presenting the evidence. There is, then, no reversible error on this issue.

*Dickens I*, 437 A.2d at 162 (citations omitted).

The Supreme Court, in *Brady* and *United States v. Agurs,* 427 U.S. 97 (1976), held that exculpatory evidence in the possession of the prosecution must be disclosed to the defendant. To establish a due process violation under *Brady*, Dickens was required to show: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) that the evidence was suppressed; and (3) that prejudice ensued. *E.g., Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Smith v. Holtz*, 210 F.3d 186, 196 (3d Cir. 2000); *United States v. Kaplan*, 554 F.2d 577, 580 (3d Cir. 1977). However, failure to disclose such evidence before trial does not require automatic reversal of a criminal conviction.

> Even though this duty of disclosure is tightly tethered to constitutional guarantees of due process, "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense." Rather, the prosecution's failure to disclose evidence rises to the level of a due process violation "only if the government's evidentiary suppression undermines confidence in the outcome of the trial." Thus, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the [concealed] evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

*Smith*, 210 F.3d at 196. Thus where the defendant was not prejudiced, there can be no true "*Brady* violation." *Id.*

The decisions of the state courts in regards to Dickens' *Brady* claims were clearly a reasonable application of Supreme Court precedent. As to Dickens' claims regarding the steak knife, the state courts found that the evidence was not exculpatory and, therefore, not subject to disclosure under *Brady*. *Dickens I*, 437 A.2d at 162. As to the eyewitness statement, Dickens has not established that he was denied an opportunity to effectively investigate or present the evidence at trial. *See Kaplan*, 554 F.2d at 580. As

noted by the state supreme court, Dickens was offered a continuance to further investigate the eyewitness statement if he deemed it necessary. Dickens declined to avail himself of the opportunity. *See United States v. Kemp*, 379 F.Supp.2d 690, 710 (E.D. Pa. 2005) (offer to continue case ameliorated any prejudice to the defendant from alleged *Brady* violation). Further, the content of the statement was fully explored before the jury on cross-examination. Thus the evidence was not, to any meaningful extent, suppressed. Accordingly, Dickens cannot establish – beyond a general allegation that earlier knowledge of the evidence would have been useful – that he was in any way prejudiced by the State's failure to disclose the existence of the eyewitness. Dickens is not, therefore, entitled to relief on this claim. Because the state court's reasoning below was a reasonable application of *Brady,* Dickens is not entitled to relief on this claim.

*Claim Four: Ineffective assistance of counsel*

Dickens claims that his attorneys provided constitutionally defective assistance. Dickens makes a variety of accusatory statements about his attorneys' competence, but states few concrete allegations of ineffectiveness. *See Strickland v. Washington*, 466 U.S. 668, 690 (1984) (defendant must identify acts or omissions of counsel); *Mayberry v. Petsock*, 821 F.2d 179, 185 (3d Cir. 1987). As far as respondents can discern, Dickens claims that his attorneys were ineffective because they did not interview witnesses, adequately investigate his claims, and made a half-hearted effort when moving for a mistrial. (D.I. 4, at 20-23). To the extent Dickens raises any other grounds of ineffectiveness not previously raised before the state supreme court, those claims are procedurally barred as unexhausted and procedurally defaulted. To the extent that

15

Dickens raises other claims of ineffectiveness not specifically addressed here, they are without merit.

To prevail on a claim of ineffective assistance of counsel, Dickens must establish that (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's error, the result would have been different. *Strickland*, 466 U.S. at 687-88; *Wells v. Petsock*, 941 F.2d 253, 259 (3d Cir. 1991). The *Strickland* analysis for a claim of ineffective assistance of counsel constitutes clearly established law under revised §2254. *See Gattis v. Snyder*, 278 F.3d 222, 236 (3d Cir. 2002); *Lawrie v. Snyder*, 9 F. Supp. 2d 428, 434-35 (D.Del. 1998). A habeas petitioner must allege facts which, if accepted as true, would satisfy both prongs of the *Strickland* test: deficient performance and prejudice to the defense. *See Wells*, 941 F.2d at 259-60; *cf. Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. Thus, to sustain an ineffectiveness claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells*, 941 F.2d at 259-60; *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). "Where prejudice is lacking, the court need not determine whether the performance was subpar." *Marshall v. Hendricks*, 307 F.3d 36, 86 (3d Cir. 2002). Against this backdrop, Dickens has not established that the state court's decision warrants relief under § 2254.

Dickens has simply failed to state what prejudice he suffered by his attorneys' alleged omissions. Dickens does not state what his attorneys would have found had they performed the investigation he suggests. Nor does he suggest what these unnamed

"witnesses" would have said that would have changed the outcome of his trial. Given Dickens' shortcomings in this regard, he has not made out a claim of ineffective assistance. *See Strickland*, 466 U.S. at 693. Finally, Dickens provides no support for his contention that his attorneys gave less than full effort in their two motions for mistrial before the trial court. Accordingly, Dickens has failed to establish that he is entitled to relief on his ineffectiveness claim.

Conclusion

Based upon the Superior Court docket sheet, it appears that transcripts of Dickens's preliminary hearing, jury trial, verdict, punishment hearing, and sentencing have been prepared. In the event that the Court directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court.

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612

DATE: May 25, 2007

Westlaw.

577 A.2d 752
577 A.2d 752, 1990 WL 43318 (Del.Supr.)
**(Cite as: 577 A.2d 752)**

Page 1

**H**

Dickens v. State
Del.,1990.
(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')
Supreme Court of Delaware.
Lawrence B. DICKENS, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 453,1989.**

Submitted Feb. 8, 1990.
Decided March 22, 1990.

Superior Court, New Castle County.

AFFIRMED.

Before CHRISTIE, Chief Justice, HORSEY and HOLLAND, Justices.

*ORDER*

**\*1** This 22nd day of March, 1990, it appears from the record that:

(1) On February 8, 1990, appellee moved, pursuant to Rule 25(a), to affirm the judgment of the Superior Court on the ground that it is manifest on the face of appellant's brief that the appeal is without merit.

(2) The appellant, Lawrence B. Dickens, was convicted after a Superior Court jury trial of murder in the first degree, attempted murder in the first degree, assault in the first degree, and possession of a deadly weapon during the commission of a felony. His convictions and sentences were affirmed by this Court on direct appeal. *Dickens v. State,* Del.Supr., 437 A.2d 159 (1981).

(3) On April 26, 1989, seven and one-half years after his convictions were affirmed by this Court, Dickens filed a motion in Superior Court for postconviction relief, contending that the jury instructions given by the trial judge were defective under *Sandstrom v.*

*Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), because portions of the instructions allegedly had the effect of shifting the burden of persuasion to the defendant. Thus, defendant contends that he was denied his right to due process because the State was not required to prove every element of the offense beyond a reasonable doubt. The State responded that Dickens' application for postconviction relief was time barred since it was not brought within the three-year time limit imposed by Superior Court Criminal Rule 61(i)(1) and since Dickens did not explain his failure to raise this contention on direct appeal. The Superior Court appointed counsel to assist Dickens with his postconviction application and directed the State to respond to the defense motion. *See* Super.Ct.Crim.R. 61(e), (f). After consideration of the parties' submissions and a review of the record, the Superior Court denied Dickens' motion for postconviction relief, concluding that Dickens' motion was time barred and also that the jury instructions were proper. We agree with the rulings of the Superior Court and affirm them.

(4) On appeal, Dickens contends that: 1) the three-year time limitation imposed by Superior Court Rule 61 violates his constitutional right of due process and equal protection of the laws, and the Superior Court lacked authority to promulgate the time bar; 2) the jury instructions given by the trial judge violate his constitutional rights under the due process clause; and 3) the trial court, after appointing counsel to assist him in his postconviction relief application, allegedly abused its discretion in failing to afford defense counsel an adequate opportunity to represent him effectively.

(5) The due process clause does not establish any right to collaterally attack a final judgment of conviction. *United States v. MacCollom,* 426 U.S. 317, 323, 96 S.Ct. 2086, 2090, 48 L.Ed.2d 666 (1976). The State of Delaware has, however, through the Superior Court Criminal Rules, provided for a means by which postconviction relief may be sought. Under the circumstances, the court may establish reasonable procedural time limitations. *See* 11 Del.C. § 5121; *State v. Terry,* Del.Supr., 148 A.2d 102, 104-05 (1959).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

577 A.2d 752
577 A.2d 752, 1990 WL 43318 (Del.Supr.)
**(Cite as: 577 A.2d 752)**

This Court has specifically addressed and rejected the contention that the time limitations of Rule 61 deny a defendant "due process" by depriving him of a "right" to indefinitely pursue postconviction relief. _Boyer v. State,_ Del.Supr., 562 A.2d 1186, 1187 (1989). It is clear that the Superior Court properly ruled that Dickens' motion is barred.

*2 (6) Since Dickens did not challenge the jury instructions at the time of the trial, he is deemed to have waived objections he could have raised, Super.Ct.Crim.R. 30(a), _Goddard v. State,_ Del.Supr., 382 A.2d 238, 242 (1977), unless he can demonstrate "cause" for relief from his failure to raise the issue and "actual prejudice" resulting from the alleged error. Super.Ct.Cr.R. 61(i)(3); _Johnson v. State,_ Del.Supr., 460 A.2d 539 (1983); _Conyers v. State,_ Del.Supr., 422 A.2d 345 (1980). Dickens, however, did not offer any explanation before the Superior Court for his failure to object to the instructions, nor does he now advance an explanation before this Court except to contend that all of his attorneys were ineffective. Although ineffective assistance of counsel may under some circumstances amount to "cause" for failure to assert rights at the proper stage in the proceedings, Dickens cannot raise this contention for the first time on appeal. Supr.Ct.R. 8; _DuRoss v. State,_ Del.Supr., 494 A.2d 1265, 1267 (1985). His motion on this issue is procedurally barred.

(7) Based on our rulings regarding Dickens' procedural defaults, this Court need not address the merits of Dickens' motion. However, this Court also rules that the well-reasoned opinion of the Superior Court to the effect that Dickens' contention as to the jury instructions fails on the merits is entirely correct.

(8) We also find that after appointing counsel to assist Dickens in his motion for postconviction relief, the court allowed the attorney ample time to answer the State's response to Dickens' motion. The attorney did respond, concluded that Dickens' motion appeared to be time barred, and stated that he would only address the merits if the Court agreed to hear the case on the merits. Under the circumstances, there was no abuse of discretion on the part of the trial court in issuing a decision on Dickens' application for postconviction relief without a further response from defense counsel.

(9) After a review of the record and the appellant's brief, we conclude that the appeal is without merit. The issues involved are clearly controlled by settled principles of Delaware law, and to the extent that matters of judicial discretion are involved, clearly there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that the motion to affirm the Superior Court is granted, and the judgment of the Superior Court is AFFIRMED.

Del.,1990.
Dickens v. State
577 A.2d 752, 1990 WL 43318 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in A.2d                                                      Page 1
Not Reported in A.2d, 1994 WL 145988 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

**H**
State v. Dickens.
Del.Super.,1994.
Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.
Superior Court of Delaware, New Castle County.
STATE of Delaware
v.
Lawrence Brent DICKENS, Defendant.
**Cr. A. Nos. IN-79-08-0371-R2, IN-79-08-0372-R2,
IN-79-08-0373-R2, IN-79-08-0374-R2, IN-
79-08-0375-R2, IN-79-08-0376-R2, IN-
79-08-0377-R2.**

Submitted Feb. 25, 1994.
Decided March 10, 1994.

Upon Motion of Defendant for Postconviction Relief-
DENIED.

Eugene M. Hall, State Prosecutor, Dept. of Justice,
for the State.
Lawrence B. Dickens, pro se.

MEMORANDUM OPINION
HERLIHY, Judge.
*1 Lawrence B. Dickens [Dickens] moves for a
second time for postconviction relief pursuant to Su-
perior Court Criminal Rule 61.

On February 20, 1980 a jury convicted Dickens of
first degree murder, attempted first degree murder,
assault first degree and possession of a deadly
weapon during the commission of a felony. On
November 3, 1981 the Delaware Supreme Court af-
firmed his convictions. *Dickens v. State,* Del.Supr.,
437 A.2d 159 (1981). In his direct appeal, Dickens
raised several issues but did not raise any of the is-
sues he now raises.

On April 26, 1989 Dickens filed his first motion for
postconviction relief. While originally filed *pro se,*
this Court appointed counsel for Dickens and directed
responses to be made by the Attorney General's Of-
fice.

In his first postconviction relief motion, Dickens
raised for the first time the constitutionality of a por-
tion of the jury charge in his 1980 trial. Through
counsel, he contested the authority of this Court to
impose the three-year deadline, or any deadline, for
postconviction relief motions found in Criminal Rule
61(i)(1).

This Court held that it was within the rule-making
power of this Court to set such a deadline and that the
deadline was constitutional. *State v. Dickens,*
Del.Supr. 602 A.2d 95, 98, 99 (1989) [*Dickens I* ].
This ruling was affirmed on appeal. *Dickens v. State,*
Del.Supr., No. 453, 1989, Christie, C.J. (March 22,
1990) (ORDER) [*Dickens II* ].

This Court also ruled that Dickens' claim was time
barred. *Dickens I,* 602 A.2d at 100. The Supreme
Court affirmed this holding as well. *Dickens II.* In ad-
dition, notwithstanding his claim being time barred,
this Court held that the challenged jury instructions
were not constitutionally defective. *Dickens I,* 602
A.2d at 103. The Supreme Court affirmed this ruling.
*Dickens II.*

In this new, second motion, Dickens raises several is-
sues. He renews his constitutional attack on the por-
tion of the jury instructions challenged in his 1989
motion. In addition, he now claims that his trial and
(direct) appeal counsel were ineffective for not rais-
ing the constitutional issue at the trial and again on
appeal. He claims he can show "cause and prejudice"
why he did not do so and why the Court should now
entertain his constitutional claim and his claim for in-
effective assistance of counsel.[FN1]

> FN1. Dickens makes no claim of ineffect-
> iveness against counsel that this Court ap-
> pointed for him in 1989.

In his first motion in 1989, Dickens did not raise the
issue of ineffective assistance of counsel. It appears
that he attempted to do so in his appeal of this Court's
1989 ruling.
Dickens, however, did not offer any explanation be-
fore the Superior Court for his failure to object to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                Page 2
Not Reported in A.2d, 1994 WL 145988 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

instructions, nor does he now advance an explanation before this Court except to contend that all of his attorneys were ineffective. Although ineffective assistance of counsel may under some circumstances amount to "cause" for failure to assert rights at the proper stage in the proceedings, Dickens cannot raise this contention for the first time on appeal. [Citations omitted.]

*\*2 Dickens II,* at 3-4.

Dickens' renewed challenge to the propriety of the jury instructions is clearly barred. First, the same challenge was made and all the cases he now cites were made and considered in 1989. This Court's earlier rejection of his argument and the Supreme Court's affirmance of that rejection adjudicated the very issue he now raises. Thus, his renewal is barred as formerly adjudicated. Rule 61(i)(4). *Flamer v. State,* Del.Supr., 585 A.2d 736, 745 (1990).

Reconsideration of a formerly adjudicated claim is "warranted in the interest of justice". Rule 61(i)(4). However, to warrant relitigation, Dickens is required to show that "subsequent legal developments have revealed that the trial court lacked the authority to convict or punish him". *Flamer,* 585 A.2d at 746.

While Dickens' newly appointed counsel focused on the three-year rule in his argument in 1989, this Court *sua sponte,* carefully reviewed the various case authorities upon which he now relies to challenge the jury instruction at issue.[FN2] Consequently, there is no interest of justice which would remove the bar of former adjudication.

> FN2. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

Dickens' claim of ineffective assistance of counsel is also barred. The Supreme Court affirmed this Court's dismissal of his first motion for postconviction relief on March 22, 1990. *Dickens II.* Based on the language quoted above, Dickens had raised the claim of ineffective assistance of counsel in that Court, *albeit*

for the first time. However, he did not raise the issue until about four years later in his current motion. In other words, he raises ineffective assistance of counsel more than three years after the Supreme Court's opinion became final. Thus, it is time barred. Rule 61(i)(1); *Marvel v. State,* Del.Supr., No. 335, 1993, Moore, J. (December 28, 1993) (ORDER).

This bar is not absolute. It is inapplicable where there is a "colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality ... of the proceedings." Rule 61(i)(5). Dickens contends this escape clause applies to his case. His basis is that the instruction is constitutionally infirm, that his lawyers were ineffective for not challenging the instruction at trial and, thus, his claim is "colorable" and not barred.

Dickens' argument is outright bootstrap. He overlooks the fact that this Court's rejection of his constitutional challenge was affirmed. *Dickens II.* Since his lawyers would not have prevailed on this issue, their "failure" to raise it hardly makes the current claim colorable. Therefore, the procedural relief of Rule 61(i)(5) is not present.

There is an additional bar to Dickens' claim of ineffective assistance of counsel. He failed to raise it before this Court in 1989. Rule 61(i)(3). Since he did not raise it in this Court five years ago, he must show cause for relief from this default and prejudice. *Id.*

*\*3 Dickens cannot do either. According to the papers he submitted in connection with his instant motion, Dickens had all the necessary transcripts of his trial in ample time to raise the issue in his first motion. He cites pertinent portions of the transcript in his current submission and, as noted, raised the issue in the Supreme Court four years ago. His appointed counsel in 1989 apparently did not believe this claim worthy of mention, however, to this Court.

Further, on the issue of cause, attorney error, short of ineffective assistance, does not amount to "cause". *Younger v. State,* Del.Supr., 580 A.2d 552, 556 (1990). Dickens must show some external impediment preventing the raising of his claim in 1989 to this Court. *Id.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                    Page 3
Not Reported in A.2d, 1994 WL 145988 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

The record is clear the defendant had all the information he needed in 1989 to make the claim of ineffective assistance of counsel and had new counsel who was more than capable of raising this claim. In short, Dickens has utterly failed to show any impediment to his ability to raise the claim of ineffective assistance of counsel in 1989. Also, he has waited nearly four years after the Supreme Court rejected his claim as not properly raised before it to raise it in this Court and nearly fourteen years after his original trial.

Thus, Dickens cannot meet the cause test. His claim also fails under the prejudice test. The jury instruction which he argues is constitutionally defective and that his counsel should have objected to it at trial and on direct appeal has been found to be not defective. *Dickens II.* Therefore, there could be no ineffective assistance of counsel. *Cf. Whiteman v. State,* Del.Supr., No. 445, 1993, Walsh, J. (January 31, 1994) (ORDER).

In sum, Dickens cannot show either cause or prejudice and his claim of ineffective assistance of counsel is barred. Rule 61(i)(3); *Younger,* 580 A.2d at 555.

Dickens' claim of ineffective assistance of counsel is barred because he could have brought it before and did not do so. When he filed his first motion, he had the transcript of his trial which he now uses to claim ineffective assistance of counsel. In 1989, he was required to set forth this claim. Rule 61(b)(2). His failure to do so makes his current petition repetitive and it is thus barred. Rule 61(i)(2); *Robinson v. State,* Del.Supr., 562 A.2d 1184, 1185 (1989).

Rule 61(i)(5) also provides relief from the procedural bars of Rules 61(i)(2) and 61(i)(3) where there is a colorable claim of a miscarriage of justice due to a constitutional violation. This Court has already found no relief for this reason from the time bar and the same reasoning applies, *ante* at 3-4.

Even though Dickens' claims of ineffective assistance of counsel are procedurally barred under Rules 61(i)(1), 61(i)(2) and 61(i)(3), they also lack merit. In order to proceed on a claim of ineffective assistance of counsel, Dickens must show (1) trial counsel's representation fell below an objective standard of reas-

onableness and (2) that, but for counsel's unprofessional errors, there is a reasonable probability that the result would have been different. *Albury v. State,* Del.Supr., 551 A.2d 53, 58 (1988); *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a strong presumption that trial counsel's representation was professionally reasonable. *Flamer,* 585 A.2d at 753. A defendant must make substantive concrete allegations of both attorney performance deficiency and actual prejudice. *Robinson,* 562 A.2d at 1185. Dickens' allegation of ineffectiveness due to failure to challenge the jury instruction at trial and on direct appeal satisfies the need in this case to be specific.

*4 The jury instruction which Dickens challenges again now, as noted, was held not constitutionally infirm by this Court, *Dickens I,* 602 A.2d at 103, which holding was affirmed by the Supreme Court. *Dickens II.*

Thus, even if trial and direct appeal counsel had challenged the instruction in 1980-81, they would have been unsuccessful. Therefore, there was no way in which trial and direct appeal counsel were ineffective. *Skinner v. State,* Del.Supr., 607 A.2d 1170, 1173 (1992).

Defendant Lawrence B. Dickens' second motion for postconviction relief is DISMISSED because it is barred by Superior Court Criminal Rules 61(b)(2), 61(i)(1-4).

IT IS SO ORDERED.

Del.Super.,1994.
State v. Dickens
Not Reported in A.2d, 1994 WL 145988 (Del.Super.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

648 A.2d 424                                                                   Page 1
648 A.2d 424, 1994 WL 466126 (Del.Supr.)
**(Cite as: 648 A.2d 424)**

**H**
Dickens v. State
Del.,1994.
(The decision of the Court is referenced in the At-
lantic Reporter in a 'Table of Decisions Without Pub-
lished Opinions.')
Supreme Court of Delaware.
Lawrence B. DICKENS, Defendant Below, Appel-
lant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
**No. 118, 1994.**

Submitted: Aug. 12, 1994.
Decided: Aug. 25, 1994.

Court Below: Superior Court of the State of
Delaware, in and for New Castle County; Cr.A. Nos.
IN79-08-0317R2 through 0377R2.
Superior Court, New Castle County, 1994 WL
145988.

AFFIRMED.

Before WALSH, HOLLAND and HARTNETT, JJ.

*ORDER*
WALSH, Justice.
*1 This 25th day of August, 1994, upon considera-
tion of the appellant's opening brief and the appellee's
motion to affirm pursuant to Supreme Court Rule
25(a), it appears to the Court that:

(1) Lawrence B. Dickens ("Dickens"), appeals from
the denial of a motion for postconviction relief pursu-
ant to Superior Court Criminal Rule 61. Dickens was
convicted following a jury trial of first degree murder
and related offenses. His convictions and sentence
were affirmed on direct appeal. *Dickens v. State,
Del.Supr., 437 A.2d 159 (1981).* Dickens sub-
sequently filed a motion for postconviction relief pur-
suant to Rule 61, asserting various grounds of relief.
The Superior Court denied the motion, finding the
claims either procedurally time-barred or substan-
tively without merit. *State v. Dickens, Del.Supr., 602
A.2d 95 (1989).* This Court affirmed that holding.
*Dickens v. State,* Del.Supr., No. 453, 1989, Christie,

C.J. (March 22, 1990) (ORDER). Dickens later filed
a second postconviction relief motion, asserting: (1)
that the jury instructions given were constitutionally
infirm and (2) that he had received inadequate assist-
ance of counsel during his trial and appeal. That mo-
tion was denied on procedural grounds. Dickens then
filed a motion for reargument of this ruling which
was also denied by the Superior Court.

(2) Dickens asserts on appeal that the instructions
given to the jury, that the law *presumes* a person to
intend the ordinary consequences of his acts, created
a presumption rather than permissive inference,
thereby improperly shifting the burden of persuasion
and relieving the State of proving every element of
the offenses beyond a reasonable doubt in violation
of the Fourteenth Amendment. *Sandstrom v.
Montana, 442 U.S. 510 (1979).* As the Superior
Court noted, Dickens' constitutional attack of the pro-
priety of the jury instructions is procedurally barred
since the *Sandstrom* claim was raised and rejected in
Dickens' first postconviction motion and appeal. Su-
per.Ct.Crim.R. 61(i)(4); *Flamer v. State,* Del.Supr.,
585 A.2d 736, 745 (1990). The Superior Court also
held that Dickens failed to make the requisite show-
ing under Rule 61(i)(4) that reconsideration of his
claim was warranted "in the interest of justice." We
agree that Dickens has failed to establish any basis to
reconsider this formerly adjudicated claim. Hence,
the Superior Court properly denied this claim pursu-
ant to Rule 61(i)(4).

(3) Dickens also claims that he received inadequate
assistance of counsel since his attorney failed to
make the *Sandstrom* objection to the jury instructions
or raise the issue on appeal. The Superior Court held
that the claim was procedurally barred under Rules
61(i)(1), 61(i)(2), and 61(i)(3), and lacked substantive
merit under *Strickland v. Washington,* 466 U.S. 668
(1984), since the underlying *Sandstrom* claim has
been formerly adjudicated. The Superior Court was
entirely correct that the claim was both procedurally
barred as untimely, repetitive, and defaulted, as well
as substantively without merit since our resolution of
the *Sandstrom* claim on the merits in his first post-
conviction motion precludes Dickens from establish-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

648 A.2d 424                                                                                    Page 2
648 A.2d 424, 1994 WL 466126 (Del.Supr.)
**(Cite as: 648 A.2d 424)**

ing that he was prejudiced by his attorney's failure to
request such an instruction or raise the issue on ap-
peal. *Skinner v. State,* Del.Supr., 607 A.2d 1170,
1173 (1992).

**\*2** (4) It is manifest on the face of appellant's opening
brief that the appeal is without merit since the issues
on appeal are clearly controlled by settled Delaware
law and the well-reasoned decisions of the Superior
Court dated March 10, 1994 and March 23, 1994 are
free of any error of law.

NOW, THEREFORE, IT IS ORDERED, pursuant to
Supreme Court Rule 25(a), that the judgment of the
Superior Court be, and the same hereby is,

AFFIRMED.

Del.,1994.
Dickens v. State
648 A.2d 424, 1994 WL 466126 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

822 A.2d 396                                                    Page 1
822 A.2d 396, 2003 WL 1922507 (Del.Supr.)
**(Cite as: 822 A.2d 396)**

Dickens v. State
Del.Supr.,2003.
(The decision of the Court is referenced in the At-
lantic Reporter in a 'Table of Decisions Without Pub-
lished Opinions.')
Supreme Court of Delaware.
Lawrence B. DICKENS, Defendant Below-Ap-
pellant,
v.
STATE of Delaware, Plaintiff Below-Appellee.
**No. 707,2002.**

Submitted March 20, 2003.
Decided April 21, 2003.

**Background:** Petitioner filed third motion for post-
conviction relief following affirmance of convictions
and sentences for first-degree murder, attempted first-
degree murder, first-degree assault and possession of
deadly weapon during commission of felony, 437
A.2d 159. The Superior Court, New Castle County,
denied the motion. Petitioner appealed.

**Holding:** The Supreme Court held that petitioner was
not entitled to relief.

Affirmed.
West Headnotes
**Criminal Law 110 ⚖═1668(3)**

110 Criminal Law
    110XXX Post-Conviction Relief
        110XXX(C) Proceedings
            110XXX(C)3 Hearing and Determination
                110k1666 Effect of Determination
                    110k1668 Successive Post-
Conviction Proceedings
                        110k1668(3) k. Particular Issues
and Cases. Most Cited Cases
Petitioner was not entitled to relief on third postcon-
viction motion for relief, where motion was time-
barred, there was no evidence either that Superior
Court lacked jurisdiction to try petitioner or that there
was miscarriage of justice due to constitutional viola-
tion, petitioner's claims of error on part of court-re-
lated personnel and his counsel lacked factual sup-

port, and claim of ineffective assistance of counsel
was procedurally barred as formerly adjudicated and
there was no evidence that reconsideration of that
claim was warranted in interest of justice. U.S.C.A.
Const.Amend. 6; Superior Court Criminal Rule
61(i)(4), (5).

Court Below-Superior Court of the State of
Delaware, in and for New Castle County, Cr.A. Nos.
IN79-08-0371; 0372 0376; 0377.

Before HOLLAND, BERGER and STEELE,
Justices.

*ORDER*

*1 This 21st day of April 2003, upon consideration of
the appellant's opening brief and the appellee's mo-
tion to affirm pursuant to Supreme Court Rule 25(a),
it appears to the Court that:

(1) The defendant-appellant, Lawrence B. Dickens,
filed an appeal from the Superior Court's December
6, 2002 order denying his third motion for postcon-
viction relief pursuant to Superior Court Criminal
Rule 61. The plaintiff-appellee, the State of
Delaware, has moved to affirm the judgment of the
Superior Court on the ground that it is manifest on
the face of Dickens' opening brief that the appeal is
without merit.[FN1] We agree and AFFIRM.

FN1. Supr. Ct. R. 25(a).

(2) In February 1980, a Superior Court jury convicted
Dickens of Murder in the First Degree, Attempted
Murder in the First Degree, Assault in the First De-
gree and Possession of a Deadly Weapon During the
Commission of a Felony. He was sentenced on the
murder conviction to a life sentence and on the re-
maining convictions to additional time at Level V.
Dickens' convictions and sentences were affirmed by
this Court on direct appeal.[FN2] Dickens sub-
sequently filed two motions for postconviction relief.
The Superior Court denied both motions and this
Court affirmed.[FN3]

FN2. *Dickens v. State,* 437 A.2d 159

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

822 A.2d 396                                                                                        Page 2
822 A.2d 396, 2003 WL 1922507 (Del.Supr.)
**(Cite as: 822 A.2d 396)**

(Del.1981).

FN3. *Dickens v. State,* Del.Supr., No. 453, 1989, Christie, C.J. (Mar. 22, 1990); *Dickens v. State,* Del.Supr., No. 118, 1994, Walsh, J. (Aug. 25, 1994).

(3) In this appeal, Dickens claims that the Superior Court should not have denied his postconviction motion as untimely because: a) his failure to timely file the motion was the fault of court-related personnel; and b) his attorney's ineffective assistance excuses any procedural default.

(4) Dickens' claims are unavailing. The Superior Court correctly ruled that his postconviction motion was time-barred [FN4] and there is no evidence either that the Superior Court lacked jurisdiction to try Dickens or that there was a miscarriage of justice due to a constitutional violation.[FN5] Dickens' claims of error on the part of court-related personnel and his counsel lack factual support. Moreover, his claim of ineffective assistance of counsel is procedurally barred as formerly adjudicated and there is no evidence that reconsideration of that claim is warranted in the interest of justice.[FN6]

FN4. Dickens' conviction became final in 1981. Super. Ct.Crim. R. 61(i)(1).

FN5. Super. Ct.Crim. R. 61(i)(5).

FN6. Super. Ct.Crim. R. 61(i)(4).

(5) It is manifest on the face of Dickens' opening brief that this appeal is without merit because the issues presented on appeal are controlled by settled Delaware law and, to the extent that judicial discretion is implicated, clearly there was no abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that, pursuant to Supreme Court Rule 25(a), the State of Delaware's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED.

Del.Supr.,2003.
Dickens v. State
822 A.2d 396, 2003 WL 1922507 (Del.Supr.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                      Page 1
Not Reported in F.Supp.2d, 2002 WL 31005827 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Pauls v. Kearney
D.Del.,2002.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Donald PAULS, Petitioner,
v.
Rick KEARNEY, Warden, and Attorney General of
the State of Delaware, Respondents.
No. Civ.A. 01-472-GMS.

Sept. 4, 2002.

After petitioner's state court convictions for robbery,
assault, burglary, and weapons offenses were af-
firmed on direct appeal, 476 A.2d 157, petitioner
filed for writ of habeas corpus. The District Court,
Sleet, J., dismissed without prejudice for failure to
exhaust state court remedies. Petitioner again filed
for habeas relief. The District Court, Sleet, J., held
that: (1) filing date for habeas petition was date that
petitioner signed it, and (2) application of equitable
tolling doctrine did not render petition timely.

Petition dismissed.
West Headnotes
[1] Habeas Corpus 197 ☞603

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(A) In General
            197k603 k. Laches or Delay. Most Cited
Cases
Filing date for habeas petition, for statute of limita-
tions purposes, was date that petitioner signed it, in
absence of proof that he delivered petition to prison
officials for mailing on different date. 28 U.S.C.A. §
2254.

[2] Habeas Corpus 197 ☞603

197 Habeas Corpus
    197III Jurisdiction, Proceedings, and Relief
        197III(A) In General
            197k603 k. Laches or Delay. Most Cited
Cases
Application of equitable tolling doctrine for time

period during which prior habeas petition was
pending, did not render successive habeas petition
timely, for purposes of one-year limitations period;
more than one year lapsed during which no proceed-
ings of any kind were pending before any court be-
fore successive petition was filed. 28 U.S.C.A. §
2254.

*MEMORANDUM AND ORDER*
SLEET, J.
*1 Following a jury trial in the Delaware Superior
Court, Donald Pauls was convicted of robbery, as-
sault, burglary, possession of a deadly weapon by a
person prohibited, and six counts of possession of a
deadly weapon during the commission of a felony
("PDWDCF"). Pauls is currently serving his sen-
tences at the Sussex Correctional Institution in Geor-
getown, Delaware. He has filed with the court the
current petition for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254, challenging his six PDWDCF
convictions and sentences. For the reasons set forth
below, the court will dismiss Pauls' petition as time
barred by the one-year period of limitation prescribed
in 28 U.S.C. § 2244(d).

I. BACKGROUND

On January 19, 1983, Donald Pauls entered a con-
venience store in Seaford, Delaware, where a clerk
was attending and cleaning the store. No one else was
in the store. The clerk tried to resist as Pauls ap-
proached her with a broken glass bottle, and a piece
of glass lodged in her hand. Pauls hit the clerk in the
head with a stick, yet she managed to activate a silent
alarm. He kicked her in the stomach and again hit her
with the stick. The clerk ran out the front door, but
Pauls followed her and kicked her again. She then ran
back inside the store, but Pauls followed and ordered
her to open the cash registers. Pauls emptied the cash
registers and attempted to flee. By that time, the
Seaford police had responded to the silent alarm, and
apprehended Pauls as he ran out the door.

Based on these events, Pauls was charged with first
degree robbery, first degree assault, second degree
burglary, and possession of a deadly weapon by a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

person prohibited. Pauls was also charged with six counts of PDWDCF, one count for possessing each of the two weapons (the broken bottle and the stick) during each of the three underlying felonies (robbery, assault, and burglary). On April 27, 1983, a jury in the Delaware Superior Court found Pauls guilty as charged. The Superior Court sentenced Pauls on July 22, 1983, to six consecutive three-year terms for PDWDCF.[FN1] On direct appeal, the Delaware Supreme Court affirmed. _Pauls v. State,_ 476 A.2d 157 (Del.1990).

> FN1. The Superior Court also sentenced Pauls to an additional twenty-two years on the remaining counts. Pauls' current petition challenges only his six PDWDCF convictions and sentences.

Pauls then initiated postconviction proceedings in the Superior Court by filing a motion for postconviction relief on February 3, 1987, which was denied on October 21, 1987. The Delaware Supreme Court affirmed. _Pauls v. State,_ No. 377, 1987, 1989 WL 8105 (Del. Jan.12, 1989). Pauls also filed a motion for correction of sentence on May 20, 1993, which the Superior Court denied on July 23, 1993. The Delaware Supreme Court dismissed Pauls' appeal because he failed to file a brief and an appendix. _Pauls v. State,_ No. 302, 1993, 1994 WL 10858 (Del. Jan.5, 1994).

Pauls took no further action until April 8, 1997, when he filed a petition for federal habeas corpus relief, which was dismissed without prejudice for failure to exhaust state court remedies.[FN2] _Pauls v. Kearney,_ Civ. A. No. 97-358-GMS, 2000 WL 1346693 (D.Del. Sept.12, 2000). On September 28, 2000, he returned to the Superior Court and filed a "motion for writ of error," which was treated as a motion for postconviction relief and denied on October 10, 2000. The Delaware Supreme Court affirmed. _Pauls v. State,_ No. 520, 2000, 2001 WL 233654 (Del. Mar.6, 2001).

> FN2. The court's docket reflects that Pauls' prior federal habeas petition was filed on June 27, 1997. The petition itself, however, is dated April 8, 1997. For purposes of the current analysis, the court deems Pauls' prior federal habeas petition filed on April 8,

1997.

**\*2** Pauls has now filed the current petition for federal habeas corpus relief. In his petition, Pauls asserts that his six PDWDCF convictions, based on the possession of two weapons during three felonies, are contrary to the legislative intent of the Delaware statute. (D.I. 2 at 5.) He asks the court to vacate three of those six convictions. (_Id._) The respondents argue that Pauls' petition is subject to a one-year period of limitation that expired before he filed it, and ask the court to dismiss the petition as time barred.

## II. DISCUSSION

### A. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress amended the federal habeas statute by prescribing a one-year period of limitation for the filing of habeas petitions by state prisoners. _Stokes v. District Attorney of County of Philadelphia,_ 247 F.3d 539, 541 (3d Cir.), _cert. denied,_ 534 U.S. 959, 122 S.Ct. 364, 151 L.Ed.2d 276 (2001). Effective April 24, 1996, the AEDPA provides in relevant part:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review ...

28 U.S.C. § 2244(d). In order to avoid any impermissible retroactive application of the one-year period of limitation, state prisoners whose convictions became final prior to the enactment of the AEDPA were allowed to file their habeas petitions no later than April 23, 1997. _See Burns v. Morton,_ 134 F.3d 109, 111 (3d Cir.1998)(prohibiting dismissal of petitions filed on or before April 23, 1997, as untimely under § 2244(d)(1)(A)).

Pauls' convictions became final long before the AEDPA was enacted. The Delaware Supreme Court affirmed Pauls' convictions and sentences on April 9, 1984. Although Pauls did not seek review by the United States Supreme Court, the ninety-day period

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31005827 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

in which he could have filed a petition for a writ of certiorari is encompassed within the meaning of "the conclusion of direct review or the expiration of the time for seeking such review," as set forth in § 2244(d)(1)(A). *See Kapral v. United States,* 166 F.3d 565, 576 (3d Cir.1999)(holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the United States Supreme Court). Therefore, Pauls' convictions became final in July 1984, several years before the enactment of the AEDPA. Thus, he could have filed a timely habeas petition with this court not later than April 23, 1997. *See Burns,* 134 F.3d at 111.

[1] The court's docket reflects that Pauls' current habeas petition was filed on July 10, 2001. (D.I.2.) A pro se prisoner's habeas petition, however, is considered filed on the date he delivers it to prison officials for mailing to the district court, not on the date the court dockets it. *Id.* at 113. Pauls has provided the court with no documentation establishing the date he delivered his petition to prison officials for mailing. The petition itself, however, is dated June 25, 2001. In the absence of proof respecting the date of delivery, the court deems Pauls' petition filed on June 25, 2001, the date he signed it. *See Eley v. Snyder,* Civ. No. 00-34-GMS, 2002 WL 441325, *2 (D. Del. Mar 20, 2002).

*3 Even so, Pauls' habeas petition was filed well beyond the April 23, 1997 deadline. That, however, does not necessarily require dismissal of the petition as untimely, because the one-year period may be either statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

B. Statutory and Equitable Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation as follows:
The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). An application for state post-conviction review is properly filed "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett,* 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000).

In addition, the one-year period of limitation is subject to equitable tolling. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.), *cert. denied,* 534 U.S. 944, 122 S.Ct. 323, 151 L.Ed.2d 241 (2001); *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir.1998). The doctrine of equitable tolling applies:
only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted).

Relevant to the tolling analysis in the case at hand are Pauls' prior federal habeas petition and his motion for writ of error.[FN3] As described previously, Pauls filed a federal habeas petition on April 8, 1997, which was dismissed without prejudice for failure to exhaust state court remedies on September 12, 2000. The United States Supreme Court has ruled that the one-year period cannot be statutorily tolled under § 2244(d)(2) while a prior federal habeas petition was pending. *Duncan v. Walker,* 533 U.S. 167, 172, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001). *Duncan,* however, left open the possibility that the one-year period may be equitably tolled while a prior federal habeas petition was pending. *Id.* at 183 (Stevens, J., concurring).

> FN3. The court is aware of Pauls' earlier postconviction proceedings that terminated prior to the enactment of the AEDPA. Prior to April 24, 1996, the federal habeas statute imposed no specific period of limitation for filing habeas petitions. Thus, any postconviction proceedings that terminated prior to April 24, 1996, are not relevant to the tolling analysis.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2002 WL 31005827 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

[2] The court need not determine whether the one-year period should be equitably tolled while Pauls' prior federal habeas petition was pending. As the following analysis demonstrates, even if the court assumes that the one-year period was equitably tolled from April 8, 1997, through September 12, 2000, more than one year lapsed during which no proceedings of any kind were pending in any court before Pauls filed the current habeas petition.

The one-year period of limitation began running on April 24, 1996, when the AEDPA was enacted. By the time Pauls filed his prior federal habeas petition on April 8, 1997, 350 days had lapsed during which no postconviction proceedings were pending. These 350 days must be counted toward the one-year period. The one-year period began running again on September 13, 2000, the day after the court dismissed Pauls' prior federal habeas petition. An additional fifteen days lapsed before Pauls filed his motion for writ of error in the Superior Court on September 28, 2000. Assuming that the one-year period was statutorily tolled while the motion for writ of error was pending until March 6, 2001, [FN4] another 110 days passed before Pauls filed the current federal habeas petition on June 25, 2001.

> FN4. It appears that the one-year period should not be statutorily tolled while Pauls' motion for writ of error was pending because the Delaware Supreme Court ruled that it was untimely. *Pauls, 2001 WL 233654 at ----1.* Because the Delaware Supreme Court found it untimely, it was not "properly filed" for statutory tolling purposes. *See Fahy v. Horn, 240 F.3d 239, 244 (3d Cir.), cert. denied, 534 U.S. 944, 122 S.Ct. 323, 151 L.Ed.2d 241 (2001); Woods v. Kearney, 215 F.Supp.2d 458, 2002 WL 1845006, *4 (D.Del. Aug.9, 2002).* The court need not make such a determination, however, because the petition is untimely even if the one-year period was statutorily tolled while Pauls' motion for writ of error was pending.

*4 In sum, 475 days lapsed during which no proceedings of any kind were pending in any court before Pauls filed his current habeas petition. Even if the court tolls each of the periods of time described above during which various proceedings were pending, more than one year lapsed during which no proceedings were pending. Accordingly, the court will dismiss Pauls' petition as time barred.[FN5]

> FN5. The court notes that Pauls has failed to articulate any extraordinary circumstances that prevented him from filing his habeas petition in a timely manner. Indeed, he has not provided any reason for his delay in filing the current petition. Thus, other than the delay that occurred while Pauls' prior federal habeas petition was pending, the court can discern no circumstances which would permit applying the doctrine of equitable tolling.

### III. CERTIFICATE OF APPEALABILITY

Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When the court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, Pauls' habeas petition was filed beyond the one-year period of limitation. Applying the statutorily tolling provision and the doctrine of equitable tolling does not render the petition timely. The court is persuaded that reason-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2002 WL 31005827 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

able jurists would not debate otherwise. Pauls has, therefore, failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Donald Pauls' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED.

2. The court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

D.Del.,2002.
Pauls v. Kearney
Not Reported in F.Supp.2d, 2002 WL 31005827 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                      Page 1
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**

Thomas v. Snyder
D.Del.,2001.
Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Kevin A. THOMAS, Petitioner,
v.
Robert W. SNYDER, Warden, and Attorney General
of the State of Delaware, Respondents.
**No. CIV.A. 98-597-GMS.**

Nov. 28, 2001.

MEMORANDUM AND ORDER
SLEET, District J.
*1 Kevin A. Thomas was convicted of first degree
murder and possession of a deadly weapon during the
commission of a felony. He is presently incarcerated
in the Delaware Correctional Center in Smyrna,
Delaware, where he is serving a sentence of life im-
prisonment. Thomas has filed with this court a peti-
tion for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2254. As explained below, the court will dismiss
Thomas' petition as time barred by the one-year peri-
od of limitation prescribed in 28 U.S.C. § 2244(d).

I. BACKGROUND

On June 28, 1993, following a jury trial in the
Delaware Superior Court, Kevin A. Thomas was con-
victed of first degree murder and possession of a
deadly weapon during the commission of a felony.
The evidence at trial demonstrated that on September
13, 1992, Thomas shot David Turner in the face and
killed him. Thomas was seventeen years old at the
time. He was sentenced to life in prison without pa-
role on the murder conviction and to a consecutive
sentence of five years in prison on the weapons con-
viction. The Delaware Supreme Court affirmed
Thomas' conviction and sentence on September 21,
1994.

On December 18, 1996, Thomas filed in state court a
motion for post-conviction relief pursuant to Rule 61
of the Delaware Superior Court Criminal Rules. The
trial court summarily dismissed Thomas' Rule 61 mo-

tion on December 23, 1996. Thomas appealed to the
Delaware Supreme Court. His subsequent motion to
withdraw the appeal was granted on March 11, 1997.
Thomas filed a second Rule 61 motion for post-
conviction relief on March 27, 1997, which was sum-
marily dismissed on May 9, 1997. Again, Thomas ap-
pealed to the Delaware Supreme Court. The Court af-
firmed the order of dismissal on November 24, 1997.

Thomas has now filed with this court the current peti-
tion for a writ of habeas corpus pursuant to 28 U.S.C.
§ 2254. In his petition Thomas articulates four separ-
ate grounds for relief: (1) The searches of his resid-
ence and car were in violation of the Fourth Amend-
ment, and all evidence seized from these searches
should have been suppressed; (2) The trial court erred
in admitting identification testimony that was the res-
ult of an impermissibly suggestive photographic
identification procedure; (3) The trial court violated
his constitutional right to due process by giving a
supplemental jury instruction pursuant to *Allen v.
United States,* 164 U.S. 492 (1896); and (4) His con-
stitutional rights were violated when police ques-
tioned him without a parent or legal guardian present.
The respondents argue that the petition is subject to a
one-year period of limitation that expired before
Thomas filed it. Thus, they request that the court dis-
miss the petition as time barred.

II. DISCUSSION

A. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty Act
of 1996 ("AEDPA"), Congress amended the federal
habeas statute by prescribing a one-year period of
limitation for the filing of § 2254 habeas petitions by
state prisoners. *Stokes v. District Attorney of the
County of Philadelphia,* 247 F.3d 539, 541 (3d
Cir.2001). Effective April 24, 1996, the AEDPA
provides:
*2 (1) A 1-year period of limitation shall apply to an
application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court.
The limitation period shall run from the latest of –
(A) the date on which the judgment became final by

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

the conclusion of direct review or the expiration of the time for seeking such review....

28 U.S.C. § 2244(d)(1). In order to avoid any impermissible retroactive application of the one-year period of limitation, state prisoners whose convictions became final prior to the enactment of the AEDPA were allowed to file their § 2254 petitions no later than April 23, 1997. *See Burns v. Morton,* 134 F.3d 109, 111 (3d Cir.1998)(prohibiting dismissal of petitions filed on or before April 23, 1997, as untimely under § 2244(d)(1)(A)).

Thomas' conviction became final prior to the enactment of the AEDPA. He was convicted on June 28, 1993. The Delaware Supreme Court affirmed the judgment of conviction on September 21, 1994. Thomas was then allowed ninety days in which to file a petition for a writ of certiorari with the United States Supreme Court. *See* Supreme Court Rule 13. Although Thomas did not file a petition with the United States Supreme Court, the ninety-day period in which he could have filed such a petition is encompassed within the meaning of "the conclusion of direct review or the expiration of the time for seeking such review," as set forth in § 2244(d)(1)(A). *See Kapral v. United States,* 166 F.3d 565, 576 (3d Cir.1999)(holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the United States Supreme Court). Therefore, Thomas' conviction became final on December 20, 1994, ninety days after the Delaware Supreme Court affirmed his conviction, and well before the enactment of the AEDPA on April 24, 1996. Thus, he could have filed a timely habeas petition with this court not later than April 23, 1997. *See Burns,* 134 F.3d at 111.

Ascertaining the precise date Thomas filed his habeas petition with the court is somewhat problematic. The court's docket reflects that the petition was filed on October 21, 1998, the date the clerk's office received his petition and filing fee. A pro se prisoner's habeas petition, however, is considered filed on the date he delivers it to prison officials for mailing to the district court, not on the date the court receives it. *Id.* at 113. Thomas has provided the court with no documentation establishing the date he delivered his petition to

prison officials for mailing. The petition itself, however, is dated August 10, 1998. The respondents maintain that the filing date is October 8, 1998, but they provide no documentation to support this conclusion. Under these circumstances, the court will extend Thomas every benefit of the doubt and will consider his habeas petition filed on August 10, 1998, the earliest possible date he could have delivered it to prison officials for mailing.

\*3 Obviously Thomas' habeas petition was filed well beyond the April 23, 1997 deadline. That, however, does not end the inquiry because § 2244(d)'s period of limitation may be either statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

### B. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Thomas filed in state court a Rule 61 motion for post-conviction relief on December 18, 1996, which the Superior Court summarily dismissed on December 23, 1996. As previously noted, Thomas appealed from the order of dismissal. His subsequent motion to withdraw the appeal was granted on March 11, 1997. The respondents concede, and correctly so, that the filing of this motion for post-conviction relief tolled the period of limitation. Thus, the period of time from December 18, 1996, through March 11, 1997, does not count toward the one-year period of limitation.FN1

> FN1. The court notes that the one-year period is tolled during the time between the Superior Court's dismissal of Thomas' Rule 61 motion and his timely appeal to the Delaware Supreme Court. *See Swartz v. Meyers,* 204 F.3d 417, 420 (3d Cir.2000).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Thomas filed a second Rule 61 motion for post-conviction relief in state court on March 27, 1997, which was summarily dismissed on May 9, 1997. The Delaware Supreme Court affirmed the dismissal on November 24, 1997. Again, the respondents concede that the filing of the second Rule 61 motion tolled the period of limitation.[FN2] Thus, the period of time from March 27, 1997, through November 24, 1997, is excluded from the one-year limitation period.[FN3]

> FN2. Only a "properly filed application" for post-conviction review tolls the one-year period under § 2244(d)(2). Whether Thomas' second Rule 61 motion constitutes a "properly filed application" is subject to debate. Under Rule 61, "[a]ny ground for relief that was not asserted in a prior postconviction proceeding ... is thereafter barred." Super. Ct. R.Crim. P., Rule 61(i)(2). This procedural bar, however, is inapplicable where a motion raises "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction." *Id.*, Rule 61(i)(5). The court need not, and does not, address whether Thomas' second Rule 61 motion was a "properly filed application" because the respondents concede that the one-year period was tolled while the second Rule 61 motion was pending. Regardless, as discussed herein, Thomas' habeas petition is untimely.

> FN3. Thomas could have filed, but did not file, a petition for a writ of certiorari with the United States Supreme Court within ninety days of the Delaware Supreme Court's order. *See* Supreme Court Rule 13. As explained above, on direct review that ninety-day period is excluded from the one-year period of limitation. *See Kapral,* 166 F.3d at 576. In post-conviction proceedings, however, the time during which a state prisoner may file a petition in the United States Supreme Court does *not* toll the one-year

period, and the ninety-day period is counted. *Stokes,* 247 F.3d at 543.

Nonetheless, since the date of the enactment of AEDPA, more than one year has passed during which statutory tolling does not apply. First, from April 24, 1996, through December 17, 1996, a period of 238 days, no post-conviction proceedings were pending, and those 238 days are included as part of the one-year period. In addition, from March 12, 1997, through March 26, 1997, no post-conviction relief proceedings were pending, and those fourteen days must be counted. Finally, from November 25, 1997, through August 9, 1998, a period of 258 days, no motion for post-conviction relief was pending, and those 258 days must be counted.

In sum, following the enactment of the AEDPA, 510 days lapsed during which Thomas had no post-conviction proceedings pending for purposes of § 2244(d)(2). This period of time, well in excess of one year, must be counted. The court thus concludes that while the statutory tolling provision applies to certain portions of time since the enactment of the AEDPA, it does not render Thomas' habeas petition timely filed.

## C. Equitable Tolling

Additionally, the one-year period of limitation prescribed in § 2244(d) may be subject to equitable tolling. *Fahy v. Horn,* 240 F .3d 239, 244 (3d Cir.2001); *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 618 (3d Cir.1998). The doctrine of equitable tolling applies:
*4 only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has 'in some extraordinary way' been pre-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

vented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones, 195 F.3d at 159, quoting United States v. Midgley, 142 F.3d 174, 179 (3d Cir.1998).*

In the instant case, Thomas argues that the AEDPA's one-year period of limitation is at odds with the three-year period allowed for filing a Rule 61 motion for post-conviction relief. He contends that because Delaware allows three years in which to file a Rule 61 motion, and petitioners are required to exhaust state remedies before filing habeas petitions in federal court, it is unfair to apply the AEDPA's one-year period of limitation, rather than Delaware's three-year period.

Although Thomas is correct that Delaware generally allows three years in which to file a Rule 61 motion, *see* Super. Ct. R.Crim. P., Rule 61(i)(1), the court is unimpressed by his equitable tolling argument. As explained above, the court has applied § 2244(d)(2)'s tolling provision to exclude the periods of time during which his two post-conviction proceedings were pending before the state courts. These periods of time do not count against Thomas. There is nothing unfair or inequitable in applying the AEDPA's one-year period of limitation to petitioners who wait more than a year before filing a habeas petition in federal court, even if the Delaware rule permits a longer period of time in which to file Rule 61 motions.

More important, Thomas has failed to articulate any extraordinary circumstances that prevented him from filing his habeas petition with this court in a timely manner. Indeed, he has failed to offer *any* explanation for the delay. He has not provided the court with any reason why, after the AEDPA was enacted, he waited until December 18, 1996, to file his first Rule 61 motion. He has not explained why, after his second Rule 61 proceedings were completed on November 24, 1997, he waited until August 10, 1998, to file his habeas petition with this court.

In short, the court cannot discern any extraordinary circumstances that warrant applying the doctrine of equitable tolling. Thomas' habeas petition will be dismissed as untimely.

### D. Motion for Appointment of Counsel

In a letter to the court dated April 16, 2000, Thomas inquired respecting appointment of counsel in this matter. The court construes this letter as a motion for appointment of counsel. The Sixth Amendment right to counsel does not extend to habeas proceedings. *See Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); United States v. Roberson, 194 F.3d 408, 415 n. 5 (3d Cir.1999).* Additionally, the court has determined that Thomas' habeas petition will be dismissed as untimely. Accordingly, Thomas' letter dated April 16, 2000, construed as a motion for appointment of counsel, will be denied as moot.

### III. CERTIFICATE OF APPEALABILITY

*\*5 Finally, the court must determine whether a certificate of appealability should issue. See Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When the court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel, 529 U.S. 473, 484 (2000).* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, Thomas' habeas petition is barred by the one-year period of limitation. The court cannot conclude that the period should be statutorily or equitably tolled to render the petition timely. The court is convinced that reasonable jurists would not debate otherwise. Thomas therefore cannot make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

### IV. CONCLUSION

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 5
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

For the foregoing reasons, IT IS HEREBY
ORDERED THAT:

1. Thomas' petition for a writ of habeas corpus pursu-
ant to 28 U .S.C. § 2254 is DISMISSED, and the re-
lief requested therein is DENIED.

2. Thomas' letter dated April 16, 2000, requesting ap-
pointment of counsel, is construed as a motion for ap-
pointment of counsel, and so construed, is DENIED
as moot.

3. The court declines to issue a certificate of appeal-
ability for failure to satisfy the standard set forth in
28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

D.Del.,2001.
Thomas v. Snyder
Not Reported in F.Supp.2d, 2001 WL 1555239
(D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**CERTIFICATE OF SERVICE**

I hereby certify that on May 25, 2007, I electronically filed the attached

documents with the Clerk of Court using CM/ECF. I also hereby certify that on May 25,

2007, I have mailed by United States Postal Service, the same documents to the following

non-registered participant:

Lawrence B. Dickens
SBI No. 263838
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947

/s/ James T. Wakley
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 4612
james.wakley@state.de.us

Date: May 25, 2007